763 So.2d 27 (2000)
Roy LEDET
v.
BURGER KING/SYDRAN.
No. 99-1380.
Court of Appeal of Louisiana, Third Circuit.
April 26, 2000.
Writ Denied June 30, 2000.
*28 Kenneth D. St. Pe, Guillot and St. Pe, Lafayette, Louisiana, Counsel for Plaintiff/Appellant.
Dennis R. Stevens, Gibbens and Stevens, New Iberia, Louisiana, Counsel for Defendant/Appellee.
(Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, and ELIZABETH A. PICKETT, Judges).
WOODARD, Judge.
The main issue raised by this appeal of a workers' compensation forfeiture judgment is whether an employee, who falsely represented several mileage reimbursement claims, forfeited all of the workers' compensation benefits to which he would otherwise be entitled. We hold that an employee forfeits only the rights which flow from the misrepresentation that he committed, hence an employee misrepresenting his mileage reimbursement only forfeited his right to mileage.
Mr. Roy Ledet sustained injuries while in the course and scope of his employment as a porter with Burger King/Sydran (BKS) on September 30, 1995. He attempted to push a garbage can through BKS' kitchen when he slipped, as he passed between an ice-machine and one of BKS' managers. As he grabbed the manager's shoulder and the ice-machine to prevent his fall, his back emitted a popping sound.
Mr. Ledet consulted with Dr. Bruce Razza, whom he had seen for back problems and surgeries pre-dating the accident sub judice. Dr. Razza performed surgery in March 1997. Apparently, BKS and Travelers Property Casualty (TPC), its workers' compensation insurer, denied Mr. Ledet's entitlement to workers' compensation benefits, and Mr. Ledet filed a petition to recover such benefits on July 14, 1998. In the meantime, he submitted several mileage reimbursement requests for his costs of travel to seek medical treatment in New Orleans and Lafayette, Louisiana. TPC reimbursed him for his 1998 mileage requests of June 1, June 10, November 3, and December 8 but did not pay that of June 28 and June 29.
For his various visits to Dr. Raza's office in the New Orleans vicinity, Mr. Ledet submitted the following claims:

*29
June 1, 1998: 374 miles
June 10, 1998: 372 miles
June 28, 1998: 368 miles
November 3, 1998: 342 miles
December 8, 1998: 342 miles

Furthermore, mileage requests forms dated September 1, 1998 and November 18, 1998, reflecting visits to Dr. Hodges in Lafayette, both stated that he traveled sixty miles for each visit.
BKS introduced evidence which established that Mr. Ledet's mileage claim for his Dr. Hodge visit should not have exceeded fourteen miles, and his mileage claim for his Dr. Raza's visits should not have exceeded 260 miles. Ms. Carol Rademacher, a TPC claim adjuster, testified that she did not notice any inappropriate submission besides the ones aforementioned. Mr. Ledet explained that his inflated mileage claims could have been due to his personal miscalculation or his vehicle's odometer not resetting all the way down to zero at the beginning of each trip. He denied having willfully tried to deceive TPC.
Upon discovering Mr. Ledet's improper mileage submission, TPC filed a motion to terminate his benefits, asserting that he had forfeited any right to workers' compensation benefits under La.R.S. 23:1208. After a hearing on the motion held on June 8, 1999, the workers' compensation judge found that Mr. Ledet had willfully misrepresented the amount of miles for which he could claim reimbursement and that, under La.R.S. 23:1208, he forfeited his right to seek any workers' compensation benefits. Mr. Ledet appeals.

WILLFUL MISREPRESENTATION
We must decide whether the workers' compensation judge manifestly erred when she found that Mr. Ledet's submission of erroneous mileage was willful misrepresentation. When there are two permissible views of the evidence, the workers' compensation judge's choice between them does not amount to a manifest error.
In Resweber v. Haroil Const. Co.,[1] the Louisiana Supreme Court stated that a party, requesting a remedy under La.R.S. 23:1208, must prove the following requirements: (1) a false statement or representation, (2) made willfully, and (3) for the purpose of obtaining or defeating any benefit or payment. The issue of whether an employee forfeited his workers' compensation benefits is one of fact, which we shall not reverse on appeal, absent a manifest error.[2]
In the case sub judice, Mr. Ledet does not dispute that BKS met the statute's first and third prong. However, he claims that BKS did not meet the second prong, namely, that he willfully inflated his mileage reimbursement claim. He insists that he may have miscalculated the amount of miles or that his trip odometer may have malfunctioned. The workers' compensation judge was particularly impressed with the inflated miles he submitted for his Dr. Hodge visit and considered this specific submission to be "so grossly exaggerated as to indicate ... that there was a willful misrepresentation." Considering the fact that Mr. Ledet lived only six to seven miles from Dr. Hodges office, an area with which he is familiar, and the fact that he also provided false mileage information on at least seven occasions, we find that the workers' compensation judge had a reasonable basis to find his misstatement to have been willful. Accordingly, we find no manifest error and affirm this part of the judgment.

ESTOPPEL
Mr. Ledet argues that TPC and BKS paid some of the mileage claims with the knowledge that it was inaccurate for the very purpose of entrapping him to be able to claim that he forfeited his right to *30 considerable workers' compensation benefits. We find this argument to be perilously close to being frivolous. Besides Mr. Ledet's unsubstantiated assertions in his brief, we find no evidence in the record of such an intention. Furthermore, Ms. Rademacher provided a rational explanation regarding her reasons for paying Mr. Ledet's claim when she suspected that it was excessive. Accordingly, we find this argument to be without merit.

SCOPE OF FORFEITURE
Having found that the workers' compensation judge did not manifestly err in holding that Mr. Ledet made wilful misrepresentations about his mileage, we must next determine BKS' remedy under La. R.S. 23:1208; specifically, whether Mr. Ledet forfeited all of his rights to workers' compensation benefits.
Forfeiture of workers' compensation benefits is a harsh remedy; thus, statutory forfeiture must be strictly construed.[3] Moreover, the beneficent purpose of the Workers' Compensation Law requires that its provisions be interpreted liberally in favor of the employee.[4] When violating La.R.S. 23:1208(A), an employee subjects himself to the sanctions set forth in La.R.S. 23:1208(E), which states that "[a]ny employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits[.]"
In Supreme Rice Mill v. Guidry,[5] we determined that when the legislature spoke of the forfeiture of "any" right, it meant any right which flowed from the perpetrated misrepresentation. In the instant case, the right which flows from Mr. Ledet's misrepresentation of mileage is his reimbursement for mileage. His rights to other benefits are irrelevant as no misrepresentation was made regarding them, and they do not flow from his right to mileage reimbursement. Accordingly, we reverse this part of the workers' compensation judge's decision.
Nevertheless, under La.R.S. 23:1208(D), we assess Mr. Ledet with $500.00 in civil penalties for his misrepresentation and order that he reimburse TPC for the full amount of mileage benefits which TPC paid him from June 1, 1998, forward, which were introduced into evidence in the instant matter.

CONCLUSION
We find no manifest error in the workers' compensation judge's finding that Mr. Ledet committed a willful misrepresentation concerning mileage, and we affirm this part of the judgment. However, we find that the judge erred in finding that he forfeited all workers' compensation benefits. Accordingly, we reverse and remand for a trial on the merits of any outstanding issues pending before the workers' compensation court. We assess Mr. Ledet with $500.00 in civil penalties and order that he repay TPC for the full amount of mileage benefits which he obtained from June 1, 1998, forward, which were introduced into evidence in the instant matter. We cast the costs for this appeal equally between Appellants and Appellees.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SAUNDERS, J., concurs and assigns written reasons.
SAUNDERS J., concurring with reasons:
While I agree with the result of the majority opinion, I would find the same *31 based on the unconstitutionality of La.R.S. 23:1208.
In Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73, writ denied, 97-1582 (La.10/17/97); 701 So.2d 1330, after finding the claimant did not act willfully in misrepresenting a prior knee injury, this court, on its own motion, found the hearing officer did not have subject matter jurisdiction over the adjudication of the claim of willful misrepresentation, i.e. fraud. We provided the following discussion, which I would adopt in toto and apply to the matter before us:
Wholly apart from the substantive errors made by the hearing officer, on our own motion, we notice the want of the lower tribunal's subject matter jurisdiction as it pertains to a claim for forfeiture of benefits as provided for in La. R.S. 23:1208.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ.P. art. 1. Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of demand, the amount in dispute, or the value of the right asserted. La.Code Civ.P. art. 2. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. La.Code Civ.P. art. 3. Unlike other exceptions, the exception of subject matter jurisdiction is an issue that cannot be waived or conferred by the consent of the parties. Tran v. Schwegmann's Giant Super Market., 609 So.2d 887 (La.App. 4 Cir.1992). The exception of subject matter jurisdiction can be raised at any stage of a proceeding, and an appellate court may raise the exception on its own motion. Colacurcio, III v. Ledet, 94-1798 (La.App. 4 Cir. 9/28/95); 662 So.2d 65.
Effective November 7, 1990, La. Const. art. V, § 16 was amended to provide for original jurisdiction of all civil and criminal matters in district courts, except as otherwise authorized by the constitution or "except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters." Sampson v. Wendy's Management, Inc., 593 So.2d 336, 337 (La.1992). Consistent with this constitutional provision, the office of worker's compensation was granted original, exclusive jurisdiction over claims for any compensation or benefits, La.R.S. 23:1310.3. However, as the Supreme Court has observed such subject matter jurisdiction was not granted to adjudicate disputes or obligations imposed by the workers' compensation act that fall beyond "benefit and penalties directly associated with the employee's work-related injury and his receipt of workers' compensation benefits. See LSA-R.S. 23:1291 et seq." Sampson, 593 So.2d at 339.
La.R.S. 23:1208, the provision upon which the hearing officer relied, provides in pertinent part:
§ 1208 Misrepresentations concerning benefit payments; penalty; civil immunity
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation....
. . . .
E. Any employee violating this section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
In Resweber v. Haroil Const. Co., 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, the supreme court outlined requirements for a forfeiture of benefits under La.R.S. 23:1208: a false statement or representation *32 willfully made for the purpose of obtaining or defeating any benefit or payment. Significantly, La.R.S. 23:1208 has been construed to represent an absolute bar to compensation benefits, regardless of whether the misrepresentations pertain to the injury for which an injured employee seeks benefits.
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries.
Resweber v. Haroil, 660 So.2d at 12.
The claim itself is not contingent upon whether a potential claimant falls within the ambit of the workers' compensation act (is injured by an accident during the course and scope of his employment), or is based on the merits of the claim before the hearing officer, (sic) is strictly concerned with any misrepresentation made by a claimant.
Thus, it appears that when an employee violates La.R.S. 23:1208, his actions are tortious in nature (the conduct may even be considered criminal in nature), rather than a workers' compensation matter. At best, the conduct prohibited by La.R.S. 23:1208 presents a cause of action in tort for fraud or deceit.
In Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979), our Supreme Court recognized that La.C.C. Art. 2315 affords a broad ambit of protection for persons damaged by intentional and negligent acts of others. Further, Louisiana courts have long recognized that a party who is injured by the fraud and deceit of another has a cause of action against the offending party for damages. Swann v. Magouirk, 157 So.2d 749 (La. App. 2nd Cir.1963); White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2nd Cir.1974). In Altex Ready-Mixed Concrete Corp. v. The Employers Commercial Union Insurance Company et al[.], 308 So.2d 889 (La.App. 1st Cir.1975), writ refused, 312 So.2d 872 (La.1975), the court stated the following:
"Fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another, ... to cause loss or inconvenience to the other."

Deville v. Leonards, 457 So.2d 311, 313 (La.App. 3 Cir.1984). See also Cagle v. Loyd, 617 So.2d 592 (La.App. 3 Cir.1993).
In Coleman v. Sheraton Pierremont, 25,452 (La.App. 2 Cir. 1/19/94); 631 So.2d 50, 53, citing Sampson v. Wendy's Management, Inc.[,] 593 So.2d 336 (La. 1992), the supreme court noted "that a retaliatory discharge cause of action found in the chapter on worker's compensation was not a worker's compensation matter to be heard by administrative hearing officers, since the cause of action was in tort and/or a claim for civil penalties." Following the reasoning in Sampson, we find that the penalties meted out by the hearing officer in accordance with La.R.S. 23:1208 against claimant clearly were not "directly associated with the employee's work-related injury," Sampson, 593 So.2d at 339. Instead, the nature of the cause of action embodied in La.R.S. 23:1208 is tortious/delictual in nature, falling beyond the jurisdictional authority of the hearing officer as authorized by La. Const. Art V, § 10(A)(B), § 16(A), La.R.S. 23:1310.3. Clearly, the misconduct characterized by La.R.S. 23:1208 falls within a well recognized area of tort law (the tort of fraud/deceit), and thus we conclude that the hearing officer and the Office of Workers' Compensation lacked jurisdiction to impose sanctions under La.R.S. 23:1208.
Id., at 76-78. (Footnotes omitted.)
I feel that the WCJ in the matter sub judice had no subject matter jurisdiction *33 to determine whether this plaintiff committed a fraud, civil or criminal. But I would do more than find simply a lack of subject matter jurisdiction, as we did in Grant, 696 So.2d 73, to reach the more fundamental problem with an administrative officer using the La.R.S. 23:1208 to adjudge this matter.
First, a consideration of La.R.S. 23:1208 in depth is appropriate. In Grant, we failed to discuss Subsection (C) of La.R.S. 23:1208, which provides the penalties for making a false statement or representation under Subsection (A). Subsection (C) provides:
(1) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of ten thousand dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or fined not more than ten thousand dollars, or both.
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
(3) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of less than two thousand five hundred dollars, shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained," for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
The supreme court most recently discussed the penal nature of La.R.S. 23:1208 in Resweber. Discussing the history of La.R.S. 23:1208, the court provided:
The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent. Prior to 1989, Section 1208 required a criminal conviction under its provisions before the employee forfeited his benefits. However, the legislature eliminated the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture of benefits by amending Section 1208 to require only a "violation" of the Section. 1989 La. Acts No. 454. Thus, the legislature chose to make it easier to establish grounds for a claimant's forfeiture of benefits. H. Alston Johnson, Workers' Compensation, Developments in the Law, 50 La.L.Rev. 391, 401 (1989). A 1992 amendment to Section 1208 added civil penalties to the criminal penalties and made clear that a hearing officer is to determine whether a claimant violated the section, resulting in the disqualification from receiving benefits. (FN 4). 1992 La. Acts No. 763. See generally, Denis Paul Juge, Louisiana Workers' Compensation § 6:3 (1995). The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.
Id., at 12-13.
Footnote four cited in the above excerpt of Resweber explains:

*34 Subsequent to the alleged misrepresentations in the present cases, the legislature again amended Section 1208 to provide more severe criminal penalties ranging from six months imprisonment where the value of benefits is less than two thousand dollars, and up to ten years, where the value equals or exceeds ten thousand dollars. The amendment also increased the civil penalties to not less than five hundred dollars nor more than five thousand dollars. 1993 La. Acts No. 829.
Id., at 17.
While I agree that La.R.S. 23:1208 clearly has the goal of discouraging the use of fraud to manipulate the workers' compensation system, the penalizing method of that discouragement belies a most fundamental problem with the statute which has thus far remained ignored. La.R.S. 23:1208 is unconstitutional in that it violates the procedural due process guarantee of the U.S. Const. Amends. V, XIV and La. Const. art. I, § 2 (1974). Indeed, courts of appeal have been historically reluctant to raise constitutional issues on their own motions. However, Georgia Gulf v. Board of Ethics for Public Employees, 96-1907 (La.5/9/97); 694 So.2d 173, clearly recognizes the constitutional right of a court of appeal to raise and decide constitutional issues on its own motion. The Georgia case provides the following discussion:
From the outset, the Ethics Commission asserts that the due process issues were not raised in the administrative proceedings, were not assigned as error on the appellate level, and are not properly before us. We disagree.
. . .
Moreover, La.Code Civ.P. art. 2164 provides that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." As noted in the Official Revision Comments under Art. 2164, the appellate court has "complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below." In a similar vein, Uniform Rules of Louisiana Court of Appeal, Rule 1-3 provides that even in the absence of an assignment of errors, the appellate court can review such issues if the "interest of justice clearly requires...."
Under the codal authorities cited herein above, it is clear that the appellate court had the right to consider the issue of due process even though there was no assignment of error in that regard. Accordingly, we find that the due process issue is also properly before us.
Id., at 175-76. (Emphasis added.)
In considering its constitutionality, a review of the evolution of the statute is helpful. Acts 1914, No. 20, § 37(1) was the original enactment setting forth the foundation for the modern La.R.S. 23:1208. The earlier section read:
If for the purpose of obtaining or defeating any benefit or payment under the provisions of this act, either for himself or any other person, any person willfully makes a false statement or representation, he shall be guilty of a misdemeanor and upon conviction thereof shall be fined not exceeding five hundred dollars or imprisoned not exceeding twelve months, or both, in the discretion of the Court; and an employee from and after such conviction shall cease to receive any compensation under this act.
The statute remained substantially unchanged until 1989 when the "guilty of a misdemeanor ... conviction" language was removed and the last sentence was changed to read: "Any employee violating this Section shall in addition forfeit any right to compensation benefits under this Chapter." Acts 1989, No. 454, § 5. Significant, however, is that the language indicating that a fraudulent person shall be subject to not more than a five hundred dollar fine or not more than twelve months in *35 prison remained unchanged. Similarly, in 1992, the statute was re-structured and the possibilities for civil penalties were added, but the penal provision remained the same. In the years following, further amendments were made to the statute not pertinent to this discussion.
Interestingly enough, the supreme court in Resweber, 660 So.2d 7, acknowledged that the legislature removed "the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture," which it once required, but the Resweber court failed to pause at the result of removing the conviction requirement while keeping the felony and misdemeanor penalty sections. Id., at 12. On the contrary, the supreme court embraced the ease of punishing without conviction. Indeed, it certainly is easier to convict a claimant in a civil proceeding. However, it is painfully clear that such a convenience can only run far askance of constitutional objectives.
In its discussion, the Resweber court cited a law review article to support the legislatures intent of making La.R.S. 23:1208 easy "to enforce and to make the penalties stiffer." Id. Yet, a look at the article reveals an unpersuasive one-liner which states: "The sanction for misrepresentations concerning benefit payments is changed, probably to make it easier to prove." H. Alston Johnson, Workers' Compensation, Developments in the Law, 50 La.L.Rev. 391, 401 (1989). In his article, Mr. Johnson footnotes the language change of La.R.S. 23:1208 which requires a violation not a conviction.
While I do not mean to cast doubt on the legislature's intent to make fraud easy to prove; nevertheless, the short-sightedness of the change from "conviction" to a mere violation is simply constitutionally unacceptable.
Clearly, it is the very criminality of the statute that places it in peril. In Grant, 696 So.2d 73, we discussed fraud as a civil tort matter. But a civil tortfeasor does not risk imprisonment, so it is now appropriate to consider when fraud becomes a criminal matter. A sanction is penal when it is "punishable; inflicting a punishment; containing a penalty, or relating to a penalty." BLACK'S LAW DICTIONARY 1132 (6th ed.1990). A crime is any conduct so defined by the Criminal Code, by other acts of the legislature, or by the Louisiana Constitution. La.R.S. 14:7. A felony is "any crime for which an offender may be sentenced to death or imprisonment at hard labor," while a misdemeanor is any crime other than a felony. La.R.S. 14:2(4) and (6). The Code of Criminal Procedure adds to the definition of misdemeanor by noting that a misdemeanor "includes the violation of an ordinance providing a penal sanction." La.Code Crim.P. art. 933.
La.R.S. 23:1208 unquestionably provides for severe criminal sanctions, particularly where in Subsection (C)(1) and (C)(2) an offender may be subject to, by definition, felonious imprisonment at hard labor for up to ten or five years, respectively. The penal nature of the statute, placed in the workers' compensation scheme to be used at the behest of a hearing officer, is the essence of the glaring disjunct between the procedural means and substantive ends of La.R.S. 23:1208 and the constitutional concerns invoked by criminal proceedings.
The fundamental concerns that arise in a criminal setting are absent in civil matters, hence the need for the added procedural devices to safeguard constitutional rights of the accused.
In a criminal case, unlike in a civil setting, procedural protections sufficient to afford due process are provided through the criminal procedural rules. The defendant's privacy interests are protected from erroneous deprivation by adequate criminal procedural safeguards such as the grand jury indictment, the right to seek a preliminary examination, his ability to move for a bill of particulars and discovery, and the contradictory hearings on motions such as was had in the present case.
*36 State v. Pierre, 606 So.2d 816, 820 (La. App. 3 Cir.), writ denied, 607 So.2d 568 (La.1992).
La. Const. art. I, § 13 provides the following protections:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.
La. Const. art. I, § 14 provides that the "right to a preliminary examination shall not be denied in felony cases except when the accused is indicted by a grand jury." Section 15 of our constitution provides for how criminal proceedings may be initiated and guarantees that no person shall be subject to double jeopardy. Further, Section 16 of Article I sets forth the provisions for the right to a fair trial in a criminal proceeding while Section 17 ensures the criminally accused the right to a jury trial.
These Sections of Louisiana's Constitutional Declaration of Rights have no counterpart in civil proceedingslogically so; the possibility of loss of personal liberty is not at stake. Further, as a natural consequence of the kinds of penalties criminal statutes impose, we must not fail to mention the sharp distinction between the burden of proof in a civil matter and that of a criminal matter. In ordinary civil actions, a plaintiff must prove each element of his case by a mere preponderance of the evidence. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). In criminal matters, all of the evidence must satisfy a rational juror that the defendant is guilty beyond a reasonable doubta higher burden of proof. State v. Meshell, 567 So.2d 1181 (La.App. 3 Cir.1990).
In sum, with La.R.S. 23:1208 as applied in the present matter, Defendant enjoys none of the procedural safeguards of a criminal proceeding; nevertheless, he is subject to the sanctions of a penal statute. La.R.S. 23:1208 applied as it is broadly written, in disregard of constitutional due process, is nothing more than a criminal statute masquerading in civil garb, designed to discourage fraud in workers' compensation matters with over-broad penalization.
For these reasons, I concur in the majority opinion.
NOTES
[1] 94-2708 (La.9/5/95); 660 So.2d 7.
[2] Jones v. Trendsetter Prod. Co., Inc., 97-299 (La.App. 3 Cir. 2/25/98); 707 So.2d 1341, writ denied, 98-793 (La.5/15/98), 719 So.2d 463.
[3] Benoit v. Frank's Casing Crew, 97-1522 (La. App. 3 Cir. 5/20/98); 713 So.2d 762, writ denied, 98-1697 (La.10/9/98); 726 So.2d 31.
[4] Darbonne v. M & M Right of Way Contrs., 96-1730 (La.App. 3 Cir. 4/30/97); 693 So.2d 299.
[5] 98-1252 (La.App. 3 Cir. 3/10/99), 737 So.2d 856, writ denied, 99-961 (La.5/28/99); 743 So.2d 668.