821 So.2d 685 (2002)
BOSSIER ELECTRIC, Appellant
v.
George CUBLEY, Appellee.
George Cubley, Appellee
v.
Bossier Electrical Contractors, Inc., Appellant.
Nos. 35,852-WCA, 35,853-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 2002.
*686 Christopher R. Phillip, for Appellant.
William R. Long, Shreveport, for Appellee.
Before NORRIS, WILLIAMS and PEATROSS, JJ.
*687 WILLIAMS, Judge.
In this worker's compensation case, the employer, Bossier Electrical Contractors, Inc., appeals a judgment finding that the claimant, George Cubley, was entitled to temporary total disability benefits and supplemental earnings benefits, subject to a credit for the employer's prior payments. The worker's compensation judge denied the employer's claim for forfeiture and reimbursement of benefits paid and assessed penalties and attorney fees. For the following reasons, we reverse in part and affirm in part.

FACTS
The claimant began working as an electrician at Bossier Electrical Contractors, Inc. ("BEC") in April 1998. At that time, he completed an employee health questionnaire and did not list all of his prior surgical procedures. Claimant had been previously diagnosed with carpal tunnel syndrome and had undergone surgery on his left wrist in 1997. Despite this condition, claimant had been able to perform his duties as an electrician.
On August 12, 1999, claimant injured his left elbow pulling cable through a conduit while working for BEC at a college in Shreveport. The claimant did not seek medical treatment at the time and continued working until October 25, 1999, when he was terminated due to a reduction in BEC's workforce. On that same date, claimant saw Dr. Marion Milstead for treatment of his left elbow injury and the resulting aggravation of his carpal tunnel condition.
On December 16, 1999, BEC began paying the claimant temporary total disability (TTD) benefits at the maximum rate of $384 per week, retroactive to the date of November 11, 1999. BEC mistakenly paid claimant TTD benefits of $367 for the week of May 7-13, 2000, an under payment of $17. Thereafter, BEC resumed TTD payments of $384 weekly through October 28, 2000.
The claimant began working as an electrical inspector for the City of Shreveport on October 16, 2000, with an annual salary of $25,132. BEC began paying claimant supplemental earnings benefits (SEB) on December 1, 2000, based on his new salary. BEC did not pay SEB for the period of October 28, 2000, when the TTD payments ended, through November 30, 2000.
In December 1999, BEC filed a claim for forfeiture of claimant's benefits and reimbursement for compensation paid, contending that claimant failed to truthfully answer the health questionnaire and that he made false statements to obtain benefits in violation of LSA-R.S. 23:1208.1 and 23:1208. Claimant filed a claim alleging that BEC had failed to authorize medical treatment for his left elbow and failed to timely pay disability benefits. The claimant also sought penalties and attorney fees. The matters were consolidated for trial.
After a hearing, the worker's compensation judge (WCJ) issued oral reasons for judgment, finding that claimant had not violated the statutory forfeiture provisions and that he was entitled to medical treatment related to his left elbow injury. The WCJ rendered judgment ordering BEC to pay claimant the $17 shortage in TTD benefits and awarding claimant SEB of $642.31 for the period of October 16, 2000 through November 30, 2000, subject to a credit for TTD already paid by BEC. The WCJ assessed a penalty of $2,000 for BEC's failure to timely pay benefits and awarded claimant $4,000 in attorney fees. BEC filed a motion to modify the judgment to reflect the WCJ's finding that BEC was entitled to a credit for compensation paid prior to the disability date. *688 After a hearing, the WCJ rendered an amended judgment adding a clause that BEC was entitled to a credit for any TTD benefits paid prior to December 6, 1999, the date of claimant's disability from work. BEC appeals the judgment.

DISCUSSION
BEC contends the WCJ erred in finding that claimant was entitled to receive compensation benefits. BEC argues that claimant forfeited his right to benefits by failing to truthfully answer the health questionnaire.
A work injury subsequent to a known permanent partial disability qualifies an employer to seek reimbursement for worker's compensation benefits from a statutorily designated second injury fund under certain circumstances. Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214. A claimant's untruthful statement regarding his permanent partial disability that prejudices an employer's ability to seek reimbursement from the fund gives rise to an affirmative defense, whereby the injured employee forfeits all compensation benefits. Wise, supra. A permanent partial disability (PPD) is defined as any permanent condition, whether due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment. LSA-R.S. 23:1378(F).
An employer may inquire about previous injuries, disabilities or other medical conditions and the employee shall answer truthfully. LSA-R.S. 23:1208.1. Failure to answer truthfully shall result in the employee's forfeiture of benefits, provided that said failure directly relates to the medical condition on which the claim for benefits is based or affects the employer's ability to receive reimbursement from the second injury fund. The written form inquiring about past medical conditions must contain a notice advising the employee that failure to answer truthfully may result in forfeiture. LSA-R.S. 23:1208.1.
Thus, the statute provides for forfeiture under narrow circumstances: there must be an untruthful statement, prejudice to the employer and compliance with the notice requirements of the statute. Wise, supra. The penalty of forfeiture will be imposed only when the employer is prejudiced, i.e., when the false statement directly relates to the medical condition on which the claim for benefits is based or affects the employer's ability to receive reimbursement from the second injury fund. Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7. The employer has the burden of proving each element of the statute. Forfeiture of benefits is a harsh remedy and the statute should be strictly construed. Wise, supra.
In the present case, the claimant was required to complete BEC's form entitled "Health Questionnaire" as part of the hiring process. Near the top of the first page, the form asked "Do you have or have you ever had any of the following?" The form contained an extensive list of medical conditions to which the employee was to mark "yes" or "no." Following this list were seven additional medical inquiries. At the bottom of the second page was a notice cautioning that the failure to answer truthfully could result in forfeiture of benefits.
In his responses, claimant wrote "yes," to a question asking if he had ever received treatment for a neck condition. When asked about prior surgery, he wrote "yes neck." In reply to a question about having any physical impairments or disabilities, claimant responded "neck surgery in 1988." He answered the question, "Have you ever had a worker's compensation injury?" by writing "Yes, nothing but *689 x-rays." Claimant responded "no" to another question: "Have you ever received compensation or medical benefits under worker's compensation?"
In considering the questionnaire answers provided by claimant, we note that he reported his prior neck surgery and replied yes to the vague question of whether he had sustained a prior "worker's compensation injury." Claimant explained that he did not report his left wrist surgery because he had not missed any scheduled work, but took a personal leave day for the procedure. In addition, Dr. Milstead testified in his deposition that the treating physician at the time had classified the claimant's carpal tunnel surgery as "personal," and not as a worker's compensation claim.
When asked why he answered no to having received compensation or medical benefits, claimant testified that he did not consider the prior neck and right elbow injuries as worker's compensation claims because he did not receive any disability benefits. Instead, the doctors were paid directly by the employer. The claimant also stated that because of the language used, he thought the question referred to him having received "money in my pocket," and that at the time he had not received worker's compensation disability payments.
The record shows that the health form's questions were not narrowly tailored to meet BEC's need to become informed about a PPD of the claimant. The questionnaire did not define any of the terms used and the general nature of the questions left their interpretation to the claimant, who stated that he answered the questions quickly before starting work. The claimant testified that no one told him these questions were very important and that he needed to take time to study them before answering, but that he had answered "as truthfully as I knew how" and to the best of his ability.
Delmar Monroe, an owner of BEC, and Richard Roberts, the foreman, stated that they had reviewed the questionnaire, but did not follow up with claimant about any of his answers. Although claimant's answers to some questions were ambiguous, BEC representatives never asked him about his responses and did not seek to clarify any ambiguity. BEC bore the burden of proving that the claimant gave false answers. Absent an attempt to obtain an explanation of ambiguous answers, BEC failed to demonstrate that the claimant knowingly gave an untruthful answer for which forfeiture is justified. Consequently, based upon this record, we cannot say the WCJ erred in concluding that claimant did not violate Section 1208.1.
Even if we were to assume arguendo that claimant made a false statement, BEC was required to prove that claimant's failure to report carpal tunnel syndrome was prejudicial, in that the failure "directly related" to the condition which is the basis for the compensation claim or affected BEC's ability to recover from the second injury fund. A direct relation is shown when the subsequent injury was inevitable or very likely to occur because of the pre-existing condition.
Here, Dr. Milstead testified in his deposition that the claimant's carpal tunnel, ulnar nerve problems and the tennis elbow were individual and separate problems, each of which could be caused by his work activity. Dr. Milstead indicated that a person can have one of the problems without the others. Thus, the testimony does not demonstrate that claimant's left elbow injury was inevitable or very likely to occur as a result of his existing carpal tunnel condition. Consequently, the evidence does not show that the undisclosed carpal *690 tunnel syndrome was directly related to the left elbow injury, which is the basis of the claim for benefits.
In order to be reimbursed by the second injury fund, an employer is required to prove that a claimant has a PPD, defined in LSA-R.S. 23:1378(F) as any permanent condition of such seriousness as to constitute a hindrance or obstacle to obtaining employment. The employer must also show that it possessed actual knowledge of the PPD prior to the current injury and that the PPD merged with the subsequent injury to cause a greater disability than would otherwise have resulted. Wise, supra.
Here, BEC filed a claim for reimbursement with the Second Injury Board, which found that the evidence failed to show that claimant's condition met the definition of PPD in Section 1378(F). The Board further found that even if claimant did have a PPD, it would not have merged with the subsequent injury of August 1999 to cause a greater disability. Consequently, the Board denied BEC's claim. The WCJ noted that BEC had not appealed this decision.
Based upon the evidence presented, we cannot say the WCJ was clearly wrong in accepting the Board's determination that claimant's carpal tunnel condition did not meet the definition of PPD, and in finding that as a result, the claimant's failure to provide carpal tunnel information did not affect BEC's ability to receive reimbursement from the second injury fund. Thus, BEC failed to establish that it was prejudiced on the basis that the excluded medical information either directly related to the injury that is the subject of the claim or affected BEC's ability to recover from the second injury fund. Because BEC did not meet its burden of proving each element required by Section 1208.1, forfeiture cannot occur. The assignment of error lacks merit.
BEC next contends that the WCJ erred in finding that claimant did not make a false statement to obtain worker's compensation benefits. It is unlawful for a person to make a false statement or representation for the purpose of obtaining or defeating any worker's compensation claim. LSA-R.S. 23:1208(A). Any employee who makes such a willful false statement shall, upon determination by the WCJ, forfeit any right to worker's compensation benefits. LSA-R.S. 23:1208(E); Heckel Logging Inc. v. Pruitt, 33,314 (La. App.2d Cir.5/10/00), 759 So.2d 1044.
In the present case, Regina Patterson, the claims adjuster for BEC's insurer, testified that she obtained a lengthy recorded statement from the claimant. Patterson stated that they discussed the claimant's medical history and that he had informed her about his previous carpal tunnel surgery.
Lisa Anderson was assigned by Patterson as the case manager for the claimant's medical care. Anderson testified that the claimant told her about his previous carpal tunnel release procedure and neck surgery. Anderson stated that she also spoke with the claimant at the office of Dr. Knight, who was treating claimant's left elbow injury. Anderson testified that she did not have the impression that claimant was trying to withhold any medical information.
Whether the claimant forfeited the right to worker's compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error. KLLM Inc. v. Reed, 00-295 (La.App. 3rd Cir.10/11/00), 771 So.2d 728. The WCJ considered the evidence that claimant advised Patterson and Anderson of his previous medical treatment and accepted his *691 explanation that his failure to inform BEC about each of his prior surgical procedures was inadvertent. Based upon this record, the WCJ could reasonably have found that the claimant's non-disclosure of prior injuries and treatment was not a deliberate misrepresentation made for the purpose of obtaining worker's compensation benefits. Consequently, we cannot say the WCJ was clearly wrong in finding that the claimant did not violate Section 1208 and that forfeiture was not warranted. The assignment of error lacks merit.
BEC also contends the WCJ erred in awarding penalties and attorney fees. BEC argues that its mistaken failure to pay $17 in TTD benefits and $642 in SEB was not arbitrary since the amounts did not exceed the credit due BEC for overpayments.
The payment of SEB is due on the fourteenth day after an employer or insurer has knowledge of the compensable SEB. LSA-R.S. 23:1201(C). Failure to pay timely subjects the liable party to a penalty together with reasonable attorney fees, unless the claim is reasonably controverted or if such nonpayment results from conditions beyond the defendant's control. LSA-R.S. 23:1201(F)(2). Reasonable attorney fees may be awarded if an employer or insurer acted arbitrarily, capriciously or without probable cause in discontinuing payment of benefits. LSA-R.S. 23:1201.2. These provisions are penal in nature and must be strictly construed. Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803.
In the present case, the parties stipulated that claimant was entitled to receive disability benefits at the maximum rate of $384 per week. BEC paid claimant TTD benefits retroactive to November 11, 1999. The WCJ found that claimant was disabled from work as of December 6, 1999, and awarded BEC a credit for its TTD payments made prior to that date, a period of 25 days at $54.86 per day. The total credit for this period was $1,371.50. In May 2000, BEC incorrectly paid TTD of $367 for one week, a $17 shortage.
On October 16, 2000, claimant began working as an inspector for the City of Shreveport at a salary of $25,132 per year. During October 2000, claimant earned $1,047, or $65.45 per day. This amount represented a loss of earning capacity of $35 per day compared to his pre-accident earnings of $101.53 per day, for a total lost earning capacity of $561.28. Thus, for the period of October 16, 2000 through October 31, 2000, the claimant was entitled to receive SEB of $374.18 ($561.28 × 66 2/3). Instead, for the period of October 16-28, 2000, BEC paid TTD benefits of $713.18, resulting in an overpayment of benefits to claimant of $339.
The WCJ awarded claimant the amount of $17 for underpayment of TTD benefits and SEB of $642.31 for the period of November 1, 2000 through December 31, 2000, subject to a credit of $1,710.50 (1,371.50 + 339) to BEC for TTD benefits previously paid. The WCJ assessed BEC with penalties and attorney fees based upon these "unpaid" benefits.
However, the record shows that BEC has made payments of compensation benefits exceeding by $1,051 ($1710.50 - $659.31) the amounts awarded to the claimant. Thus, contrary to the WCJ's finding, the claimant was not owed any unpaid benefits when the credit awarded to BEC is taken into account. Consequently, the record does not support a finding that BEC failed to pay benefits which were due or arbitrarily discontinued such payments. Therefore, the WCJ erred in awarding penalties and attorney fees and we shall reverse that portion of the judgment.

*692 CONCLUSION
For the foregoing reasons, that part of the judgment assessing BEC with penalties of $2,000 and attorney fees of $4,000 is reversed. The judgment is otherwise affirmed. Costs of this appeal are assessed to the appellant, Bossier Electrical Contractors, Inc.
REVERSED IN PART AND AFFIRMED IN PART.