843 So.2d 415 (2002)
Joy GILCREASE, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 36,523-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*416 Allen & Gooch by Eric J. Waltner, Lafayette, for Appellant.
The Law Offices of Jack M. Bailey, Jr., by Mary Lou Salley, Shreveport, for Appellee.
Before BROWN, C.J., and WILLIAMS and STEWART, JJ.
BROWN, C.J.
The employer, Wal-Mart Stores, Inc. ("Wal-Mart"), appeals a WCJ's judgment finding that the claimant, Joy Gilcrease, sustained a work-related accident and awarding her supplemental earnings benefits ("SEB"); Wal-Mart also appeals that portion of the WCJ's judgment rejecting its claim that Mrs. Gilcrease violated La. R.S. 23:1208. Mrs. Gilcrease answered the appeal, contesting the WCJ's denial of her claim for penalties and attorney fees under La.R.S. 23:1201.2. For the reasons expressed, we affirm.

Facts
Mrs. Gilcrease was a 16-year employee of Wal-Mart in Shreveport, Louisiana. She was the department manager over men's wear. On June 5, 1997, Mrs. Gilcrease injured her left hip and lower back by lifting heavy boxes of jeans at work; *417 she reported this incident to her supervisor later the same day, and a report was filed.
Four days later, on June 9th, Mrs. Gilcrease sought medical attention from Dr. Walter Asseff, her family physician. Dr. Asseff referred her to Dr. Ronald Green, an orthopedic surgeon, who treated Mrs. Gilcrease from June 26, 1997 through September 17, 2001. Dr. Green diagnosed her condition as a chronic lumbosacral L-5 strain superimposed upon a degenerative joint disease of the lumbar spine, inducing a facet syndrome. Dr. Green opined that Mrs. Gilcrease's condition was work-related. She returned to work as a cashier on July 7, 1997; however, upon experiencing a recurrence of her back pain symptoms, she left work again on August 22, 1997.
On February 9, 1998, Dr. A.E. Dean, another orthopedic surgeon, examined Mrs. Gilcrease. He opined that she could return to work as a checker and believed that although her back pain began at work, she did not necessarily have a back injury. She returned to work again in 1998, this time as a greeter at the store's main entrance; however, after standing for several hours at a time performing this job, she had to leave work again experiencing back pain. From April 20-29, 1998 and on January 15, 1999, Dr. Austin Gleason reviewed Mrs. Gilcrease's medical history and examined her. He diagnosed her with a mild bulging disc at L4-L5 and referred her for an impairment evaluation.
On April 19, 2000, Dr. Carl Goodman examined Mrs. Gilcrease and on May 31, 2000, he reviewed her MRI. Dr. Goodman believed that she was at her maximum medical improvement; he also stated that as of August 21, 2000, Mrs. Gilcrease could return to work in a "light-duty capacity" with permanent restrictions of no repeated bending, twisting, or lifting over 25 lbs. Upon reviewing Dr. Green's and Christus Schumpert's medical records, Dr. Goodman opined that Mrs. Gilcrease could perform the job of a greeter at Wal-Mart as of September 13, 2000. However, he went on to warn that she could not perform the job of greeter if such position required her to stand for eight hours without the opportunity to sit. Notably, Dr. Goodman agreed to defer to Dr. Green's assessment of Mrs. Gilcrease's back pain.
On September 13, 2000, Wal-Mart offered Mrs. Gilcrease the position of greeter. However, Dr. Green stated that Mrs. Gilcrease would not be able to perform this job if she were not allowed to sit and stand occasionally; he also warned that she would not be able to push large stacks of shopping carts. She declined to accept the job offer.
In June 1997, Mrs. Gilcrease's average weekly wage was $381.83 and her weekly workers' compensation rate was $254.68. Wal-Mart has paid to Mrs. Gilcrease weekly indemnity benefits of $254.68 from the date of the accident until October 1, 2000, when those benefits were terminated.
Mrs. Gilcrease filed this disputed claim on January 4, 2001, with the OWC. She sought payment of her medical expenses, indemnity benefits, penalties and attorney fees. On March 19, 2001, Wal-Mart filed an answer denying all of Mrs. Gilcrease's claims.
The matter was tried on September 20, 2001. Both sides submitted post-trial briefs. On December 10, 2001, in a "Reply to Claimant's Post-Trial Memorandums/Replies," Wal-Mart raised for the first time the affirmative defense of fraud pursuant to La.R.S. 23:1208, urging that Mrs. Gilcrease willfully made false representations in connection with her claim in order to obtain workers' compensation benefits. Specifically, Wal-Mart claimed *418 that in her deposition, when asked about prior injuries or accidents, Mrs. Gilcrease failed to acknowledge a 1991 work accident at Wal-Mart, which was documented by a 1007 accident report, as well as a 1989 automobile collision.
Judgment was rendered on February 15, 2002, and written reasons were assigned on March 26, 2002. By her written reasons for judgment, the WCJ found that Mrs. Gilcrease had met her burden of proving by a preponderance of the evidence that she sustained a work-related accident and resulting back strain injury on June 5, 1997, in the course and scope of her employment at Wal-Mart. The WCJ therefore awarded supplemental earnings benefits (SEB) effective October 1, 2000, and continuing in accordance with La.R.S. 23:1221(3), based on Mrs. Gilcrease's pre-injury average weekly wage of $381.83, pre-injury weekly workers' compensation rate of $254.68, and a zero monthly earning capacity assessed to her after October 1, 2000.
The WCJ awarded Mrs. Gilcrease medical expenses of $735.00 incurred from Larsen Physical Therapy. The WCJ noted how Mrs. Gilcrease failed to submit her (physical therapy) medical expenses to Wal-Mart and only listed the outstanding medical expenses in her pre-trial statement. The WCJ further found that Wal-Mart failed to prove a La.R.S. 23:1208 violation by the claimant; she found that Mrs. Gilcrease's denial of a prior work and car accident were "inadvertent based on the length of time of such accidents in relation to the June 5, 1997 work accident[.]" The WCJ also found that Wal-Mart was not arbitrary or capricious in its discontinuance of indemnity benefits and therefore denied Mrs. Gilcrease's claims for penalties and attorney fees. The WCJ further found that Wal-Mart reasonably controverted Mrs. Gilcrease's claim due to the "adverse" medical opinions given by different doctors, disputed issues of causation, and the fact that the greeter position offered by Wal-Mart was approved by two of her doctors, Drs. Goodman and Gleason. Wal-Mart was assessed with costs and interest.
Wal-Mart has appealed, raising three assignments of error. Mrs. Gilcrease filed an answer, responding to Wal-Mart's assignments and raising one of her own.[1]

Discussion

La.R.S. 23:1021(1): Definition of an "Accident"
By its first assignment of error, Wal-Mart urges that the claimant failed to satisfy her burden of establishing a compensable "accident" according to the law. Wal-Mart cites La.R.S. 23:1021, which provides the following definition:
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violating with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
* * *
Citing McConnell v. City of Ruston, 27, 154 (La.App. 2 Cir. 08/23/95), 660 So.2d 100, writ denied, 95-2348 (12/15/95), 664 So.2d 453, Wal-Mart argues that under this definition, Mrs. Gilcrease failed to produce evidence pointing to a "specific moment" that she sustained her injury. *419 Rather, the evidence adduced only showed that her injury resulted over time and was more of a progressive degeneration. Wal-Mart urges that Mrs. Gilcrease never described an identifiable event as an accident causing her injuries.
Wal-Mart observes that on August 28, 1997, when asked how she was injured, Mrs. Gilcrease responded, "over a period of working." In the 1007 accident/report form, the store manager, Robert Tombole, wrote:
Joy has been having back problems for some time. She does not know of any one thing that caused the problem. On June 4, 1997, Joy left work thinking she had a kidney infection.
Wal-Mart also notes an associate accident review form in which Mr. Tombole states that there was not an accident but a gradual deterioration. Further, Mrs. Gilcrease told an adjuster at Claims Management, Inc., that she had been hurting on and off for months and that it had gradually worsened until she finally sought medical attention. Wal-Mart argues that on her first visits with Dr. Asseff on June 9, 1997 and Dr. Green on June 26, 1997, Mrs. Gilcrease never mentioned an accident at all.
The WCJ's factual findings are entitled to great discretion and will be reversed only on a showing of manifest error. Hoy v. Gilbert, 98-1565 (La.03/02/99), 754 So.2d 207. The actual, identifiable, precipitous event may include a routing movement that the claimant is able to identify with some particularity as to time, place, and manner the objective manifestation of the accidental injury. McConnell v. City of Ruston, 27,154 (La. App.2d Cir.08/23/95), 660 So.2d 100, writ denied, 95-2348 (La.12/15/95), 664 So.2d 453.
Citing La.R.S. 23:1021(1) and Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1 Cir.1992), Mrs. Gilcrease responds that claimants who are worn down by their work rather than immediately crippled by it are not excluded from workers' compensation coverage. We agree.
The First Circuit addressed the definition of an accident under the 1989 amendment to § 1021(1) in Dyson, supra. In Dyson, plaintiff's problem was diagnosed as plantar fasciitis, an inflammation in the heel area common to people who are overweight, flat-footed, and required to stand for prolonged periods. In Dyson, the identifiable and precipitous event was the pivoting or turning movement that the plaintiff testified preceded a sharp pain in her feet. The court found for the plaintiff, stating that an otherwise healthy employee with a preexisting condition is entitled to benefits if she can prove that her work contributed to, aggravated, or accelerated her injury. Id.
In the instant case, as in Dyson, Mrs. Gilcrease's testimony about the event which caused her injury in her lower back was unrebutted by Wal-Mart. Claimant testified that on June 5, 1997, while she was lifting a heavy box of freight in the men's department, she felt a "shooting pain" in her lower back. In spite of the fact that the claimant did make statements to the effect that she had been having some back problems, she was able to identify with particularity as to time, place, and manner with regard to the objective manifestation of the accident itself. See McConnell, supra.
Mrs. Gilcrease's specification of when, where, and how the accident occurred was corroborated in several ways. Before she left work on the day of the accident, Mrs. Gilcrease did report her injury to the assistant manager, who filled out an accident report or a 1007 form that same day. She also told her husband that she had experienced *420 a "sharp pain" when she was lifting a box in the men's wear department and that she went to the doctor about the pain. Further, her daughter, Tonya Gilcrease, who was also employed at Wal-Mart at one time, was aware that as the manager over the men's wear department, her mother was required to lift large boxes of freight frequently; Tonya testified that her mother also told her that she hurt her back when she picked up an "oversized box that was full of freight."
Medical evidence further corroborates that Mrs. Gilcrease sustained an accident. A mere four days after the accident, she sought medical attention from Dr. Asseff complaining of lower back problems. Dr. Green opined that Mrs. Gilcrease's prior back injury, for which he had treated her in 1991, had fully resolved itself when he saw her in June 1997. There was no medical evidence adduced to show that she had seen him or any other physician for back problems since her 1991 injury had healed until her 1997 work accident.
After a thorough review of the evidence in its entirety, we find that there were objective findings that an actual and identifiable event caused Mrs. Gilcrease's back injury on that specific date. Her unrebutted testimony, corroborated by both Stanley and Tonya Gilcrease as well as her treating physicians, clearly establishes that she suffered an accident within the meaning of La.R.S. 23:1021(1). The WCJ was not clearly wrong or manifestly erroneous in finding that an accident occurred on June 5, 1997. This assignment lacks merit.

La.R.S. 23:1208: Willful Misrepresentation to Obtain Benefits
By its second assignment of error, Wal-Mart contends that the WCJ erred in finding that Mrs. Gilcrease did not violate La.R.S. 23:1208. It alleges that in her deposition testimony and in statements to Dr. Goodman, she made some misrepresentations of fact in order to obtain benefits. Specifically, Wal-Mart claims that Mrs. Gilcrease failed to mention her automobile accident in 1989 and her work accident at Wal-Mart in 1991. Both of these incidents resulted in back problems.
Forfeiture of benefits for misrepresentation is governed by La.R.S. 23:1208, which provides in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation. (Emphasis added).
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
* * *
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.09/05/95), 660 So.2d 7; Louisiana Workers' Compensation Corp. v. Gray, 34,731 (La.App.2d Cir.05/09/01), 786 So.2d 310. All three requirements must be present before a penalty will be imposed. Louisiana Workers' Compensation, Corp. v. Gray, 35,198 (La. App.2d 10/31/01), 799 So.2d 820; Carver v. U.S. Copy, Inc., 96-611 (La.App. 5th Cir.03/25/97), 694 So.2d 423, writ denied, 97-1507 (La.09/26/97), 701 So.2d 986.
Whether a workers' compensation claimant has forfeited her right to benefits by making a false statement for *421 the purpose of obtaining benefits is a question of fact that will not be disturbed on appeal absent manifest error. Bossier Electric v. Cubley, 35,852 (La.App.2d Cir.06/14/02), 821 So.2d 685. We are mindful that the forfeiture remedy is a harsh one and, thus, "statutory forfeiture must be strictly construed." Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.01/21/98), 707 So.2d 1214. False statements that are inadvertent or inconsequential will not result in forfeiture. Resweber, supra.
In her written reasons for judgment, the WCJ determined that Mrs. Gilcrease's statements denying a prior work and motor vehicular accident were "inadvertent based on the length of time of such accidents in relation to the June 5, 1997 work accident at Wal-Mart." On September 2, 1997, Mrs. Gilcrease disclosed to a Wal-Mart workers' compensation representative that she pulled a muscle and injured her back while working in Wal-Mart about 13 years earlier when asked if she had sustained any prior injuries. She also told Dr. Gleason that she had "pulled (a) muscle 12 years ago." It is incomprehensible to imagine that she would willfully deny a prior work accident which had also occurred at Wal-Mart when there had been a 1007 form completed at that time and it occurred in the same store. Mrs. Gilcrease's automobile accident occurred earlier than her prior Wal-Mart accident and she was not the driver when the accident occurred. We find that such omissions hardly rise to the level of being willful misrepresentations of facts.
Based upon this record, the WCJ could reasonably have found that Mrs. Gilcrease's non-disclosure of her two prior back injuries was not a deliberate misrepresentation made for the purpose of obtaining workers' compensation benefits. Consequently, we cannot find that the WCJ was clearly wrong in finding that Mrs. Gilcrease did not violate § 1208 and that forfeiture was not warranted. This assignment is meritless.

La.R.S. 23:1221(3)(a): Supplemental Earnings Benefits
In its last assignment of error, Wal-Mart urges the WCJ erred in finding that the claimant was entitled to SEB from October 1, 2000, forward based upon a zero earnings capacity. Citing La.R.S. 23:1221, it argues that Mrs. Gilcrease had the burden of proving by a preponderance of the evidence that her injury resulted in her inability to earn wages equal to 90% or more of wages at the time of her injury. Wal-Mart contends that it made a suitable offer of employment as a greeter, which would have allowed Mrs. Gilcrease to earn at least 90% of her pre-accident average weekly rate.
Wal-Mart notes that Dr. Goodman and Dr. Gleason gave their approval for Mrs. Gilcrease to perform this offered position and gave their approval for her return to work. Wal-Mart argues that Dr. Green wrote that she was only unable to work "without restriction." It further points out the trial testimony of Robert Malone, a co-manager at another Wal-Mart, who testified that if she had been unable to perform the job duties of being a greeter at the store's entrance, she could have been placed as a greeter in the garden center. Mr. Malone testified that there is usually less traffic and fewer shopping carts in the garden center and that Mrs. Gilcrease would have had the opportunity to sit down at times.
The purpose of SEB is to compensate the injured employee for the wage earning capacity she has lost as a result of her accident. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Pinkins v. Cardinal Wholesale Supply, Inc., 619 *422 So.2d 52 (La.1993). An employee is entitled to receive supplemental earnings benefits if she has sustains a work-related injury that results in her inability to earn 90% or more of her average pre-injury wage. La.R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Banks, supra; Freeman v. Poulan/Weed Eater, 93-1530 (La.01/14/94), 630 So.2d 733. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEB or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in her or the employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i). Actual job placement is not required. Banks, supra. The amount of SEB is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity. La. R.S. 23:1221(3)(a); Id.
In the present case, it is undisputed that Mrs. Gilcrease is unable to return to her pre-injury employment at Wal-Mart as department manager over men's wear, where lifting heavy boxes of freight is part of the job requirement. The sole remaining issue regarding her entitlement to SEB is whether Wal-Mart carried its burden of proving that it offered her a job which she would be able to physically perform in her geographic region and which would enable her to earn 90% or more of her pre-injury wage.
On September 13, 2000, Wal-Mart offered Mrs. Gilcrease the job position of a greeter at the same store in which she had been employed for 16 years. Such a position would enable her to earn at least 90% of her average pre-injury wage in a suitable geographic region. However, whether Mrs. Gilcrease would be able to physically perform the job of greeter is disputed by the parties.
At Wal-Mart, there are two kinds of greeter positions: one at the front entrance of the store and the other in the garden center. Evidence adduced at trial reveals that the front entrance greeter would be responsible for pulling shopping carts apart from each other, which involves twisting and turning, in addition to marking return items and welcoming incoming customers. Tonya Gilcrease, a former Wal-Mart employee, testified that she never saw a front entrance greeter sitting down because "it's too busy." Shane Jackson and Robert Malone, who both serve in managerial roles at Wal-Mart, testified to the effect that an employee with physical restrictions of occasional sit down breaks would need to be placed in the garden center, rather than at the front entrance, as a greeter. Wal-Mart claims that the position in the garden center would allow a greeter to be able to sit at times and that there are not as many shopping carts for which the greeter is responsible. However, the garden center is located outside and the greeter would be subjected to adverse weather temperatures.
As noted previously, Dr. Goodman placed with Mrs. Gilcrease the permanent physical restrictions of no repeated bending, twisting, or lifting over 25 pounds. *423 All of the physicians who treated her stated that she needed to be able to sit down and move about at times.
The September 13, 2000 job offer extended to Mrs. Gilcrease possessed the generic title of "greeter." Wal-Mart's job matrices never specified that a greeter would be provided with a chair or would be able to sit. In fact, the job offer never specified any restrictions of any kind for the position. Despite Wal-Mart's contentions that she would have been able to work in the garden center, where it claims that she would have been able to sit and stand as needed, the offer itself failed to state that she would be in the garden center and not at the front entrance. Actually, hand-written in the description section for the job, it stated that the greeter was responsible for "tagging returns coming entrance." Thus, it would have been rather illogical for Mrs. Gilcrease to conclude that this job offer would allow her to work in the garden center, rather than at the entrance of the store.
The WCJ found that Mrs. Gilcrease had "proven by clear and convincing evidence that she was unable to perform the jobs offered by Wal-Mart." The WCJ evidently found that Wal Mart had not carried its burden of proving, by a preponderance of the evidence, that it offered her a specific job she was physically able to perform. Dr. Green did not opine that Mrs. Gilcrease could return to work and perform the greeter position even if she had a chair. He assigned her permanent physical restrictions which would have required her occasionally to sit, stand, and walk as needed; another permanent physical restriction included "avoiding damp cold," a condition which would be unavoidable even as a greeter in the garden center.
The WCJ evidently assigned greater weight to the medical opinion of Dr. Green, Mrs. Gilcrease's primary treating physician. We find no cogent reason why Wal-Mart could not have fashioned a job to have met Dr. Green's restrictions. In light of the evidence presented in the record, we do not find that the WCJ's award of SEB from October 1, 2000, forward were manifestly erroneous or clearly wrong. The record supports the WCJ's finding that Wal-Mart failed to offer Mrs. Gilcrease a job position which she was able to perform. This assignment lacks merit.

La.R.S. 23:1201.2: Attorney Fees for Discontinuance of Benefits
In her answer, Mrs. Gilcrease urges that Wal-Mart was arbitrary and capricious in terminating her weekly indemnity benefits; thus, pursuant to La. R.S. 23:1201.2, she claims that she is entitled to penalties and attorney fees. She contends that Wal-Mart did not have sufficient facts concerning her medical condition when it terminated her indemnity benefits. She further argues that in September 2000, Dr. Goodman only approved of her working a "light duty capacity" job, but never specified what position she could work. Mrs. Gilcrease maintains that it was not until after Wal-Mart had terminated her benefits that Dr. Goodman approved of her performing the greeter position.
Discontinuance of payment is governed by La.R.S. 23:1201.2, which provides:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
* * *
Both penalties and attorney fees are recoverable under La.R.S. 23:1201 F if the *424 employer or insurer fails to commence payments of benefits timely or to pay continued installments timely unless the claim is reasonably controverted. However, only attorney fees are recoverable under La.R.S. 23:1201.2 if the employer arbitrarily discontinues payment of benefits due. Williams v. Rush Masonry Inc., 98-2271 (La.06/29/99), 737 So.2d 41. Stated differently, La.R.S. 23:1201.2 authorizes an award of attorney fees, but not penalties, when an employer arbitrarily or capriciously discontinues payment of benefits due.
The instant case involves the claimant requesting penalties and attorney fees for her employer's discontinuance of benefits, which were commenced timely. Thus, benefits were commenced timely as required by La.R.S. 23:1201 B. The only statute at issue in this case is La.R.S. 23:1201.2, which governs an employer's discontinuance of benefits. Because this statute does not authorize an award of penalties, we will only consider whether the WCJ erred in failing to award attorney fees to Mrs. Gilcrease.
Accordingly, the only inquiry is whether the employer acted arbitrarily, capriciously, or without probable cause in discontinuing the payment of compensation benefits so as to warrant imposition of attorney fees under § 1201.2. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. Williams, supra; Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885.
Based upon the record, the WCJ could conclude that not only were there factual disputes, but that Wal-Mart's discontinuance of benefits is based upon the factual contention that Mrs. Gilcrease forfeited her claim for benefits. Further, Wal-Mart terminated her benefits on September 30, 2000, because Dr. Goodman had released her to perform the duties of a greeter on September 21, 2000. Its termination was based upon a factual dispute as to whether a compensable "accident" had actually occurred. Further, Wal-Mart extended a bona fide job offer which Mrs. Gilcrease declined. Therefore, discontinuance of benefits in light of the facts does not constitute arbitrary or capricious conduct.
Accordingly, we find that the WCJ was not manifestly erroneous or clearly wrong in failing to award penalties and attorney fees in connection with Wal-Mart's discontinuance of workers' compensation benefits. This assignment is meritless.

Conclusion
For the reasons expressed, we affirm the judgment of the WCJ. Costs are assessed equally to both parties.
AFFIRMED.
NOTES
[1] Her answer to appeal also complains of the WCJ's failure to award penalties and attorney fees for Wal-Mart's failure to pay medical bills. She also prays for attorney fees for work performed both at the trial and appellate level. However, her brief completely omits discussion of both of these issues.