873 So.2d 942 (2004)
RISK MANAGEMENT SERVICES, Plaintiff-Appellant
v.
Brandon ASHLEY, Defendant-Appellee.
Brandon Ashley, Plaintiff-Appellee
v.
Ashley's Floor Service and Risk Management Services, Defendants-Appellants.
Nos. 38,431-CA, 38,432-CA.
Court of Appeal of Louisiana, Second Circuit.
May 14, 2004.
*943 Crawford & Anzelmo, by Donald Anzelmo, Monroe, for Appellants, Risk Management Services and Ashley's Floor Service.
Fischer & McMahon by Mark K. Manno, for Appellee.
Before STEWART, GASKINS and DREW, JJ.
GASKINS, J.
In these consolidated worker's compensation cases, the employer and its insurer appeal an adverse judgment awarding benefits to a claimant asserting a knee injury. Additionally, they complain of the ruling of the worker's compensation judge (WCJ) that the claimant did not forfeit his compensation rights by committing fraud. We affirm in part, reverse in part, and remand.

FACTS
Brandon Ashley, the claimant, was self-employed, installing floors for Ashley's Floor Service. On July 6, 2001, he allegedly tripped over his tool box and injured his left knee while unloading scraps out of his truck into a dumpster. He received treatment for this injury for several months and had arthroscopic surgery.
Risk Management Services, the self-insurer for Ashley's Floor Service, paid $9,533.72 in compensation benefits[1] and $12,673.71 in medical expenses to/or on behalf of the claimant through the end of 2001. However, in November 2001, the insurer had a videographer follow the claimant for several days and record his activities; he was seen at several of his uncle's work sites. Thereafter, the claimant reported in an employee's monthly report of earnings that he had not worked for any employer and that he had received no earnings during November 2001. In December 2001, the insurer terminated the claimant's benefits, asserting that he had made false statements and was committing fraud.
*944 On April 17, 2002, Risk Management Services filed a disputed claim for compensation with the Office of Worker's Compensation (OWC). It asserted that the claimant had forfeited the right to benefits by making false statements and representations in furtherance of a compensation claim, under La. R.S. 23:1208. (This claim is the basis of No. 38,431-WCA.) The claimant submitted an answer on June 10, 2002.
On June 20, 2002, the claimant filed a disputed claim with OWC, asserting his injury. (This claim is the basis for No. 38,432-WCA.) Named as defendants were Ashley's Floor Service and Risk Management Services.
In November 2002, the two claims were consolidated. Counsel for the claimant withdrew, and the claimant proceeded in proper person.
Trial was held on August 15, 2003. The insurer presented the testimony of Clifford Lee Cutchall, Jr., the claimant's uncle. An installer of ceramic tiles and hardwood floors, he testified that he had worked with the claimant on several occasions. The insurer had videotaped the claimant at some of these work sites on November 21, 28, and 29, 2001. (The parties stipulated that the surveillance videotapes were accurate.) According to his uncle, after he was hurt, the claimant would come to job sites and do minor tasks, like cutting boards, without compensation. The uncle testified that the claimant could not get down on the floor to do the installation work and sometimes walked with a limp. Then, in December 2001, the uncle began paying the claimant for his assistance because he was able to do some installation work. On December 7, 2001, he paid his nephew $130 and on December 14, 2001, he paid him $150.
The claimant testified. He reviewed his earning reports to the insurer that showed no earnings from the beginning of August 2001 to the end of November 2001. He also testified that he returned a check for $1,600 to the insurer because its representative told him they were denying his claim. He stated that he was still wearing his knee brace. He was shown a videotape in which he was seen first at his uncle's job site without crutches and a knee brace but then using both later that same day going to a doctor's appointment. When he returned to the job site later that day, he was still wearing the knee brace but he did not use the crutches.
At the conclusion of trial, the WCJ ruled in the claimant's favor. He found that the activities that the claimant was shown performing on the tapes were minor, like a "gofer." He also found credible the witnesses' testimony that (1) the claimant was not performing the actual flooring work and (2) he was just "hanging out" with his friends because he was bored. Consequently, the WCJ found that the claimant did not make any false statements with the intent of obtaining worker's compensation benefits. He ruled that cessation of supplemental earnings benefits (SEBs) was improper. Accordingly, the claimant was owed the check for $1,600 that he previously returned. The WCJ stated that the claimant was still entitled to benefits and medical benefits but expressed uncertainty as to whether he needed to file another claim. The insurer protested that the claimant had not presented any evidence of his continuing entitlement to these benefits.
Judgment was signed on August 20, 2003. As to the insurer's claims against the claimant alleging forfeiture due to fraud, the WCJ ruled in favor of the claimant. As to the claimant's request for continuing benefits, the WCJ ruled in favor of the claimant. It ordered reissuance to the claimant of the $1,600 compensation *945 check, plus continuing SEBs and medical treatment.
The employer and its insurer appeal.

FORFEITURE OF BENEFITS
The appellants claim that the WCJ committed manifest error in finding that the claimant did not commit fraud. They argue that the testimony of the claimant and his uncle was inconsistent and unbelievable and that the WCJ's credibility call in their favor was tainted by his alleged failure to read contradictory testimony in their depositions.
The claimant, represented by counsel on appeal, asserts that much of the conflict in the depositions and the trial testimony related to the witnesses' definition of "work," as opposed to that of appellants' counsel. Both witnesses maintained that the claimant's activities were small tasks like cutting boards and throwing away trash and did not involve actual floor installation. The claimant characterized his actions as "piddling."
Forfeiture of benefits for misrepresentation is governed by La. R.S. 23:1208, which provides in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
....
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
....
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7; Gilcrease v. Wal-Mart Stores, Inc., 36,523 (La.App.2d Cir.12/11/02), 843 So.2d 415. All three requirements must be present before a penalty will be imposed. Louisiana Workers' Compensation Corporation v. Gray, 35,198 (La.App.2d Cir.10/31/01), 799 So.2d 820; Gilcrease, supra.
Whether a worker's compensation claimant has forfeited his right to benefits by making a false statement for the purpose of obtaining benefits is a question of fact that will not be disturbed on appeal absent manifest error. Bossier Electric v. Cubley, 35,852 (La.App.2d Cir.6/14/02), 821 So.2d 685. Because forfeiture is a harsh remedy, "statutory forfeiture must be strictly construed." Wise v. J.E. Merit Constructors, Inc., XXXX-XXXX (La.1/21/98), 707 So.2d 1214; Gilcrease, supra.
Although the appellants allege that the claimant was able to work, none of the evidence demonstrated that he was able to crawl, a necessary ability in laying floors. Our review of the videotapes reveals that, at some points, the claimant appeared to be limping; however, at other times, he walked without any apparent problems. As shown on the videotapes, his activities seemed to consist of cutting boards and carrying equipment and trash to and from trucks. The evidence supports the WCJ's finding that the claimant's efforts were minor and amounted only to being a "gofer" and "hanging out" with his friends. Also, the evidence does not show that the claimant received any compensation from his uncle for his assistance before December 2001. See Mitchell v. Brown Builders, Inc., 35,022 (La.App.2d Cir.8/22/01), 793 *946 So.2d 508, writ denied, 2001-2649 (La.12/14/01), 804 So.2d 636. There, we affirmed the trial court's refusal to order forfeiture when the claimant denied engaging in any employment or self-employment since his accident although he occasionally worked without pay at his mother's snow cone stand.
The appellants assert that the trial testimony of the claimant and his uncle are in diametric contradiction to their deposition testimony as to whether the claimant "worked" for his uncle in November 2001. However, review of the record indicates genuine confusion on the witnesses' part as to what was being included in the definition of "work." We find no basis for rejecting the trial court's credibility call as clearly wrong.
Based upon our review of the record, we cannot say that the WCJ was clearly wrong in finding that the claimant did not violate the statute and that forfeiture was therefore not warranted. This assignment of error lacks merit.

SUPPLEMENTAL EARNINGS BENEFITS AND MEDICAL TREATMENT
As to the award of SEBs and medical treatment to the claimant in the judgment, the appellants assert that the WCJ erred in not allowing them to defend against the claimant's claims for these benefits. The claimant points out the vagueness of the WCJ's oral ruling in which he indicated that the only benefits owed were the ones represented by the check the claimant returned and that the claimant might need to file another form for additional benefits. The WCJ directed counsel for the employer and its insurer to prepare a judgment; this judgment, which the WCJ signed, gave the claimant "continuing supplemental earnings benefits and medical treatment." The claimant concedes that remand to the lower court may be necessary to clarify the amount of SEBs awarded, but not his entitlement to SEBs.
Appeal lies from the judgment itself, not the reasons for judgment. Louisiana Workers' Compensation Corporation v. Gray, 34,731 (La.App.2d Cir.5/9/01), 786 So.2d 310.
Findings regarding whether a worker's compensation claimant is entitled to SEBs are factual in nature. Therefore, the manifest error/clearly wrong standard applies on appeal. Under this standard, the reviewing court may reverse only if it finds that no reasonable factual bases exist for those findings which are clearly wrong or manifestly erroneous. Payne v. Lawn Lourd Lawn Service, 35,491 (La.App.2d Cir.12/5/01), 803 So.2d 321.
The record reveals a complete lack of evidence on the issue of the claimant's entitlement to SEBs and medical benefits. Since there is no reasonable factual basis for an award of continuing SEBs and medical benefits to the claimant and the appellants were not given an opportunity to oppose them, the portion of the judgment awarding them must be reversed. This includes the claimant's entitlement to the $1,600 check.[2] Therefore, we remand for further proceedings on these issues.

CONCLUSION
As to No. 38,431-WCA, the portion of the judgment dismissing the claim of forfeiture of benefits under La. R.S. 23:1208 is affirmed. As to No. 38,432-WCA, we *947 reverse the portion of the judgment continuing supplemental earning benefits and medical treatment and ordering reissuance of the $1,600 check; that matter is remanded for further proceedings on these issues.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] According to the records admitted into evidence, the claimant received temporary total disability (TTD) payments covering the period from July 10, 2001 until December 6, 2001. At that time, the records indicate a conversion from TTD payments to supplemental earnings benefits (SEB) payments.
[2] The record is unclear as to exactly what payments were included in this check. On remand, this matter should be litigated fully.