830 So.2d 533 (2002)
Michael A. MORTON, Plaintiff-Appellant
v.
WAL-MART STORES, INC., Defendant-Appellant.
Louisiana State University Health Sciences Center, Intervener-Appellee.
No. 36,398-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 25, 2002.
*535 John B. Morneau & Associates by John B. Morneau, Vivian, Michael A. Morton, for Appellant.
Allen & Gooch by Charles M. Kreamer, Lafayette, Wal-Mart Stores, Inc., for Appellant.
Weems, Schimpf, Hayter by Robert H. Shemwell, Jr., Shreveport, for Appellee/Gilsoul & Carmouche Intervener, LSUHSC.
Before BROWN, PEATROSS and HARRISON (Pro Tempore), JJ.
BROWN, C.J.
Both defendant, Wal-Mart Stores, Inc., and plaintiff, Michael A. Morton, have appealed from the judgment of the Workers' Compensation Judge ("WCJ").
The judgment states that Morton was involved in two separate work accidents at *536 Wal-Mart, one on October 25, 1999 and the other on February 17, 200[0].[1] The WCJ found that Morton fraudulently misrepresented facts concerning the second accident on February 17, 2000. Thus, in accordance with La.R.S. 23:1202, Morton "forfeited all rights to Workers' Compensation benefits only as it relates to the February 2000 work accident." Accordingly, the WCJ denied Morton's request for Temporary Total Disability Benefits ("TTDB's") from February 19, 2000, through January of 2001 and Supplemental Earnings Benefits ("SEB's").
Morton had incurred medical expenses at LSU Health Sciences Center between July 6, 2000 and November 30, 2000, in the amount of $18,576.36. The WCJ found that the charges and treatment arose from the first accident on October 25, 1999, rather than the February 17, 2000 incident and that Morton had established that the October 25, 1999 accident was a compensable accident under the Workers' Compensation Act. The WCJ ruled that Morton's forfeiture of benefits related only to the February 17, 2000 incident and, recognizing LSUHSC's intervention, ordered the medical bills to be paid.
A written judgment was signed on December 21, 2001, wherein the WCJ cast each party with 50% of costs.
Both Morton and Wal-Mart have appealed.

Discussion
Morton's Appeal
Morton alleges that the WCJ committed manifest error in the factual finding of fraud and in applying La.R.S. 23:1208, causing Morton to forfeit workers' compensation benefits, namely, TTDB's, for a period of ten months, related to the February 17, 2000 injury.
Forfeiture of benefits for misrepresentation is governed by La.R.S. 23:1208, which provides in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

....
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and, (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Co., 94-2708 (La.09/05/95), 660 So.2d 7; Smalley v. Integrity, Inc., 31,247 (La.App.2d Cir.12/09/98), 722 So.2d 332, writ denied, 99-0072 (La.03/19/99), 739 So.2d 782.[2] The statute applies to any *537 false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. Resweber, supra. La. R.S. 23:1208 is generally applicable once an accident has allegedly occurred and a claim is made. Id.
Whether a workers' compensation claimant has forfeited his right to benefits by making a false statement for the purpose of obtaining benefits is a question of fact that will not be disturbed on appeal absent manifest error. Bossier Electric v. Cubley, 35,852 (La.App.2d Cir.06/14/02), 821 So.2d 685.
In her oral reasons, the WCJ determined that Morton aggravated his prior neck and back injury on February 17, 2000, and that this aggravation was caused by an accident. The misrepresentation occurred by way of the different versions of the accident given by Morton. In a telephone interview with a claims adjuster seven days after the February 17th injury, Morton could not pinpoint a sudden, precipitous event that caused the injury, but he did indicate that he "felt the strain in [his] neck" while lifting and loading boxes. Wal Mart denied Morton's claim because Morton could not pinpoint a precipitous event that caused the injury, and therefore decided that he did not have an "accident" as defined by the Act.[3]
Morton's account of the accident in his deposition five months later differed significantly in several respects. Instead of the gradual onslaught of pain that he described in the telephone interview with the adjuster, Morton described the pain as sudden, sharp and stunning. In the previous telephone interview, Morton said that he began to feel the pain while he was cutting meat; by contrast, in the deposition, he stated that he felt a sudden sharp and stunning pain while he was picking up a box of beef from a cart to put on a cutting table. Morton could not pinpoint any event that caused him to have the pain in his first account just seven days after the accident; however, five months later, he was able to pinpoint the injury to an actual box of beef that he was lifting from the cart to the table when a sharp pain stunned him and caused him to drop the box and wait ten minutes before he attempted to pick up another box. He also stated that the pain emanated from his neck or back through his shoulder down his right arm.
At trial Morton further elaborated on how the accident occurred. He stated that he was halfway to the cutting table with a box of beef chunks when he felt a shooting pain go up his arm into his neck. He grabbed his shoulder with his left hand and yelled.
*538 In light of the disparate accounts of the accident of February 17, 2000, we must conclude that at least one of the statements made by Morton is false. The relationship between the false statement and the pending claim is probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Rosson v. Rust Constructors, Inc., 32,789 (La.App.2d Cir.03/01/00), 754 So.2d 324, writ denied, 00-914 (La.05/26/00), 762 So.2d 1105. Because there is a direct relationship between the statements and Morton's ability to obtain benefits, we cannot say that the WCJ manifestly erred in concluding that the statements were willfully made for the purpose of obtaining benefits.
Accordingly, the WCJ correctly concluded that Morton violated La.R.S. 23:1208 and properly forfeited workers' compensation benefits. "Once La.R.S. 23:1208 is found applicable and benefits are forfeited, the question of whether the employer was arbitrary and capricious in denying benefits or untimely in paying benefits becomes moot." Ard v. Orleans Material & Equipment, 98-312 (La.App. 4th Cir.12/29/98), 727 So.2d 1183.
Wal-Mart's Appeal
Wal-Mart contends that the WCJ erred as a matter of law in concluding that Morton forfeited only the workers' compensation benefits related to the February 17, 2000 accident. It contends that the jurisprudence interpreting La.R.S. 23:1208 requires forfeiture of all workers' compensation benefits, including the medical treatment Morton received at LSUHSC that the WCJ found to be related to the October 25, 1999 accident.
We are mindful that the forfeiture remedy is a harsh one and, thus, "statutory forfeiture must be strictly construed." Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.01/21/98), 707 So.2d 1214. False statements that are inadvertent or inconsequential will not result in forfeiture. Resweber, supra; Menard v. Mama's Fried Chicken, 97-488 (La.App. 3rd Cir.03/06/98), 709 So.2d 303, writ denied, 98-956 (La.06/05/98), 720 So.2d 681.
The question before this court involves the scope of forfeiture required under Section 1208(E) of the Act. Specifically, we must determine whether the phrase "[a]ny employee violating this Section shall ... forfeit any right to compensation benefits under this Chapter" requires forfeiture of medical benefits arising out of a previous accident and injury. For the reasons that follow, we conclude that it does not.
The jurisprudence is not settled in this area of the law. Cases interpreting the term "benefits" as applying to "all" benefits and not limited solely to forfeiture of indemnity benefits, involve only a single claim. See Tuminello v. Girling Health Care, Inc., 98-977 (La.App. 5th Cir.01/26/99), 731 So.2d 316; Ard, supra; LeBlanc v. Grand Isle Shipyard, Inc., 95-2452 (La.App. 1st Cir.06/28/96), 676 So.2d 1157.
In Rivera v. West Jefferson Medical Center, 96-152 (La.App. 5th Cir.07/30/96), 678 So.2d 602, the court held that although the claimant was disqualified for benefits for a second accident, the claimant was nevertheless entitled to medical benefits still due as a result of the first accident. The claimant, Rivera, was injured while climbing a ladder in the course and scope of his employment and was paid workers' compensation benefits. The occurrence of this first accident was not disputed. Rivera claimed a second accident and injury to his back four months later when he allegedly helped a fellow employee lift an ice machine. At trial, some of Rivera's *539 coworkers testified that Rivera did not help move the ice machine. The WCJ later determined that Rivera made false statements regarding the second injury, as well as false statements regarding his pre-employment health questionnaire. The WCJ held that Rivera violated La.R.S. 23:1208 and 1208.1 and had forfeited his rights to recover benefits for the second accident.
On appeal the court upheld the finding that Rivera was entitled to all medical benefits still due as a result of the first accident because the parties had stipulated to its occurrence. It also upheld the WCJ's finding that Rivera could receive no benefits for the second accident.
In Ledet v. Burger King/Sydran, 99-1380 (La.App. 3rd Cir.04/26/00), 763 So.2d 27, writ denied, 00-1512 (La.06/30/00), 766 So.2d 546, the WCJ concluded that claimant violated La.R.S. 23:1208 when he willfully misrepresented his mileage. The WCJ ruled that the claimant forfeited all workers' compensation benefits as a result of the mileage fraud. The Third Circuit reversed, holding that "when the legislature spoke of the forfeiture of "any" right, it meant any right which flowed from the perpetrated misrepresentation." Ledet, supra at 30, citing Supreme Rice Mill v. Guidry, 98-1252 (La.App. 3rd Cir.03/10/99), 737 So.2d 856, writ denied, 99-961 (La.05/28/99), 743 So.2d 668.
In Resweber, supra, the supreme court explained the distinction between La.R.S. 23:1208 and 1208.1. Section 1208 "deals with false statements made specifically for the purpose of obtaining benefits," while Section 1208.1 "deals with statements about prior injuries that are false and that are not made for the purpose of obtaining benefits." Id. at 16. Under Section 1208.1, "a false statement will only result in forfeiture of benefits when the false statement `directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund.'" Id. Thus, the employer must show prejudice. By contrast, under Section 1208, if the false statement is made for the purpose of obtaining benefits, the benefits will be forfeited for the sole reason that the claimant willfully and deliberately attempted to defraud the system.
The Resweber court stated that "the statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are willfully made for the purpose of obtaining benefits." Id. at 16. (Emphasis in original). "A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits," and an "inconsequential false statement would not result in forfeiture." Id.
We construe this language to mean that there must be a connection between the claim for benefits for which the false statements were made and the benefits forfeited.
Turning to the instant case, the false statement made by Morton was made for the purpose of obtaining benefits related to the February 17, 2000 incident. The WCJ concluded that medical benefits for which Wal-Mart claims forfeiture are related to the October 25, 1999 accident.[4] *540 Wal-Mart does not contest this finding by the WCJ. Therefore, we conclude that the WCJ did not err in restricting the scope of the forfeiture to any claim for benefits arising out of the February 17, 2000 accident.
LSUHSC Intervention
Next, Wal-Mart alleges that the WCJ erred in allowing LSUHSC to intervene three days after trial of this matter (but well before judgment) and assert a privilege on the costs of treatment and supplies incurred by Morton.
La.C.C.P. art. 1033 permits intervention in a lawsuit after the answer to the principal demand with leave of court if it "will not retard the progress of the principal action." La.C.C.P. art. 1091 permits intervention by a third person to "enforce a right related to or connected with the object of the pending action....." Heaton v. Monogram Credit Card Bank of Georgia, 01-1415 (La.App. 4th Cir.04/10/02), 818 So.2d 240. The court also considers the possible prejudice to the parties. Id. A court has broad discretion in deciding whether to allow an intervention after the answer to the principal demand has been filed. Id.; Volume Shoe Corp. v. Armato, 341 So.2d 611 (La.App. 2d Cir.1977). Thus, a two-pronged legal test must be met before the intervention is allowed. First, the intervention must not delay the case. Second, the intervener must have a right related or connected to the case that it seeks to enforce. Both parts of the test must be met for an intervention to be permitted.
In this instant case, both prongs were met. The WCJ did not allow the intervention to retard the progress of the main demand. She postponed a hearing on the intervention until after she rendered judgment on the main demand so as to avoid delay. Second, LSUHSC clearly has a privilege on the medical payments Wal-Mart owes. We also conclude that Wal-Mart was not prejudiced by the WCJ's decision to allow LSUHSC to intervene after closing arguments but before a judgment was rendered. In January of 2001, seven months prior to trial, LSUHSC sent copies of the invoiced charges and notice of its medical privilege on any settlement related to treatment for the work-related injury to Wal-Mart and Messers Morneau and Kreamer, respective council for Morton and Wal-Mart. Hence, all the parties were apprized of the lien amount and LSUHSC's privilege. We do not find that any prejudice resulted from the WCJ's ruling.
Wal-Mart also contends the WCJ erred in denying its exception of no cause of action to LSUHSC's Petition of Intervention. It alleges that the debt has been extinguished by a third party, Medicaid, through the LSU State Charity Hospital System, and therefore LSUHSC has no claim, citing La.R.S. 23:121 and the case of Blair v. Wal-Mart, 01-2211 (La.App. 4th Cir.05/15/02), 818 So.2d 1042. La.R.S. 23:1212 was amended by Act 1062 of 2001, effective August 15, 2001, providing that medical expenses are not extinguished for the employer if paid by Medicaid or other state agencies. The amendment does not appear to have retroactive effect; however, see Gilmore v. SGB Construction Services, Inc., 97-1669 (La.App. 1st Cir.05/15/98), 712 So.2d 663.
Prior to the amendment, La.R.S. 23:1212 stated that
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses....
*541 The WCJ held a hearing via telephone conference on the exception on November 15, 2001. Counsel for LSUHSC stated the hospital had received no payment from Medicaid or any other entity for the medical services rendered. Contra: Blair, supra. (Unlike the case at bar, the claimant acknowledged that Medicaid paid all of her medical expenses.) Counsel for Wal-Mart argues that because the state hospital charity system ultimately bears the cost of the medical services, this constitutes payment by a third party for purposes of extinguishing the debt.
The WCJ denied the exception, finding that La.R.S. 23:1212 did not apply to the instant case. We agree that neither the state charity hospital system nor the taxpayers that support it are third parties for purposes of the statute.
For these reasons, the judgment of the WCJ is affirmed.
AFFIRMED.
HARRISON, J., concurs in part and dissents in part with reasons.
HARRISON, Judge Pro Tempore, concurs in part and dissents in part.
I respectfully concur in part and dissent in part. The WCJ found that Morton violated the anti-fraud statute, R.S. 23:1208. The majority is correct to discern no manifest error in this portion of the judgment.
In light of this finding, however, I disagree with the WCJ's resolution of the case. Morton was involved in a serious but non-work-related auto accident in February 1999. This resulted in two "bad discs" and neck pain which never resolved. His first work injury occurred in October 1999 when, according to Morton, the handle broke off an 80-lb. box he was carrying, injuring his neck and right arm. There were no witnesses to this accident, but the WCJ accepted that it occurred; his doctors released him to return to work in late December 1999. The alleged second work injury, in February 2000, also coincidentally led to complaints of neck and right arm pain. Morton initially told an adjuster that the pain came on gradually, but when Wal-Mart denied the claim on this basis, he altered his story to report an "accident." This was the false statement or misrepresentation that activated § 1208 forfeiture.
The anti-fraud statute, R.S. 23:1208 E, provides: "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." (Emphasis added). Construing this statute, the First Circuit has emphatically held that the forfeiture of benefits under § 1208 is not limited to the time period after the claimant makes the false statement. LeBlanc v. Grand Isle Shipyard Inc., 95-2452 (La.App. 1 Cir. 6/28/96), 676 So.2d 1157. Other courts have reiterated and amplified this rule. Ard v. Orleans Material & Equip., 98-0312 (La.App. 4 Cir. 12/29/98), 727 So.2d 1183; Richey v. Vanliner Ins. Co., 97-121 (La.App. 3 Cir. 6/4/97), 696 So.2d 190, writ denied 97-1799 (La.10/13/97), 703 So.2d 620.
The majority seeks to distinguish the instant case on the grounds that it involves multiple claims. In support it cites Rivera v. West Jefferson Med. Center, 96-152 (La. App. 5 Cir. 7/30/96), 678 So.2d 602. The employer in Rivera, however, stipulated that a first accident occurred and that the claimant was entitled to benefits arising from it; it asserted fraud only with respect to the second accident. No such stipulation occurred in the instant case. The Fifth Circuit has since stated that the scope of the forfeiture was not at issue in Rivera and has declined to apply its rationale in the absence of a stipulation. Tuminello *542 v. Girling Health Care Inc., 98-977 (La.App. 5 Cir. 1/26/99), 731 So.2d 316. I would likewise decline to apply it here.
The majority also cites Ledet v. Burger King/Sydran, 99-1380 (La.App. 3 Cir. 4/26/00), 763 So.2d 27, writ denied 00-1512 (La.6/30/00), 766 So.2d 546, as authority that § 1208 authorizes the forfeiture of only those particular benefits that "flowed from the perpetrated misrepresentation." Ledet, however, addressed only mileage benefits under R.S. 23:1203 D and is limited to "only certain benefits"; it does not bar the forfeiture of all indemnity benefits when the fraudulent statement relates to the "existence or continuation of any work-related injury." Gardner v. Nabors Offshore Corp., 01-0773 (La.App. 3 Cir. 11/21/01), 800 So.2d 412.
Unlike the situations in Rivera and Ledet, Morton's fraudulent statements are relevant to the causation and the extent of his present complaints. They deal directly with the same physical complaints he seeks to attribute to a work-related injury. Even with the strict construction of statutory forfeiture, Morton has forfeited his right to all benefits. KLLM Inc. v. Reed, 00-295 (La.App. 3 Cir. 10/11/00), 771 So.2d 728.
For these reasons I would affirm the finding of a § 1208 violation, but I would render judgment forfeiting all benefits, as required by § 1208 E. I would further dismiss the intervention of LSUHSC as moot.
NOTES
[1] The judgment states February 17, 2001, but the claim states that the accident occurred on for February 17, 2000.
[2] In enacting and amending La.R.S. 23:1208, the legislature made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over the years to make La.R.S. 23:1208 easier to enforce and to make its penalties stronger. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits and this legislative intent cannot be ignored. See Resweber v. Haroil Construction Company, 94-2708 (La.09/05/95), 660 So.2d 7.
[3] An "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). Prior to the 1989 amendments to the Workers' Compensation Act, the jurisprudence provided that an "accident" had occurred for Workers' compensation purposes where the conditions of claimant's employment provided continual strain or trauma which cumulatively combined to cause a disabling condition, even though each individual event, in itself, was minor in character. Malloy v. AT & T Consumer Products, Division of AT & T Technologies, Inc., 475 So.2d 80 (La. App. 2d Cir.1985); McCoy v. Kroger Company, 431 So.2d 824 (La.App. 2d Cir.1983). These cases were legislatively overruled by Louisiana Acts 1989, No. 454, § 1, amending the definition of accident in La.R.S. 23:1021(1) to reflect that the accident must produce an injury that is more than a gradual deterioration or progressive degeneration. See Johnson, "Workers' Compensation, Developments in the Law, 1988-1989," 50 La.L.Rev. 391 (1989).
[4] Wal-Mart made a belated claim that the injuries were actually sustained in an automobile accident on February 8, 1999, and that Morton failed to disclose the accident and injury when he claimed benefits for the October 25th accident. This argument was properly rejected by the WCJ on the grounds that Wal-Mart's records showed that it had notice of the automobile accident prior to October 25.