878 So.2d 853 (2004)
Gregory M. TAYLOR, Plaintiff-Appellant
v.
TOMMIE'S GAMING and Bridgefield Insurance Company, Defendants-Appellees.
No. 38,568-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2004.
Rehearing Denied August 12, 2004.
*855 Fischer & McMahon, by Mark K. Manno, for Appellant.
Eskridge E. Smith, Jr., by Eskridge E. Smith, Jr., Linda S. Blackman, Bossier City, for Appellees, Tommie's Novelty Gaming and Bridgefield Casualty Insurance Company.
The Wanko Law Firm, LLC, by D. Steven Wanko, Jr., for Appellee, U.S. Specialty Insurance Company.
Before CARAWAY, PEATROSS & DREW, JJ.
PEATROSS, J.
This appeal arises out of a disputed claim for workers' compensation benefits between claimant, Gregory Taylor, and his employer, Tommie's Novelty and Gaming ("Tommie's"). The WCJ dismissed Taylor's claim for benefits and awarded Tommie's, Bridgefield Insurance Company ("Bridgefield") and U.S. Specialty Insurance Company ("Specialty"), restitution under La. R.S. 23:1208. The WCJ denied Defendants' request for penalties and ordered the parties to brief the issue of the amount of restitution due and set that matter for later hearing. The WCJ signed a subsequent judgment setting restitution due to Bridgefield at $12,833.62 and the amount due to Specialty at $62,340.37. Taylor now appeals and Defendants Tommie's and Bridgefield answered the appeal. For the reasons stated herein, we reverse and remand in part and affirm in part.

FACTS
Taylor was injured in a car accident during the course and scope of his employment with Tommie's on November 9, 2000. His injuries included herniated disks and Dr. Marco Ramos performed surgery on Taylor's neck. No disputed workers' compensation claim was filed for this injury; Specialty, Tommie's then workers' compensation insurer, paid Taylor medical and indemnity benefits in the amount of $40,432.14. In May 2001, Taylor returned to light duty work at Tommie's; and, in August 2001, he began his regular duty work as a video poker technician. Taylor alleges that, on September 14, 2001, he sustained another work-related injury to his neck while moving a 700-pound pool table at Tommie's place of business. Either the same or next day, Taylor claims to have injured his neck again moving a pin ball machine to Tommie's residence. Collectively, these events form the basis of Taylor's injury for which he seeks compensation in the present suit. Taylor claims the second injury was actually a "re-injury" of the prior herniated disks suffered in the November 2000 work-related automobile accident. Between the two injuries, Tommie's changed workers' compensation carriers from Specialty to Bridgefield, so Bridgefield was the carrier at the time of the injury providing the basis for the instant workers' compensation claim. Taylor initially named only Bridgefield as defendant in the suit, but later added Specialty as a defendant on the theory that the second injury was an *856 aggravation of the first, which occurred while Specialty covered Tommie's. Specialty disputed the claim and refused to pay benefits. Bridgefield paid medical expenses in the amount of $3,746.11 and disputed the remainder of the claim. Bridgefield filed a cross-claim against Specialty alleging that, to the extent the current injury was a result of the prior neck injury from the November 2000 automobile accident, Specialty was liable for medical and indemnity benefits and penalties and attorney fees.
Specialty and Bridgefield filed reconventional demands against Taylor alleging that he made false statements in order to obtain compensation benefits and, therefore, under La. R.S. 23:1208, he forfeited his right to any benefits and should be ordered to pay full restitution for any benefits paid to him and reasonable costs of the investigation plus attorney fees. Taylor filed an exception of vagueness in response to Specialty's reconventional demand, which was denied.[1]
Trial was held on this matter on April 15, 2003. At the close of Taylor's testimony, Defendants moved for an involuntary dismissal which was granted by the WCJ. The WCJ found that Taylor had violated La. R.S. 23:1208 and that Specialty and Bridgefield were entitled to restitution. The WCJ refused to cast Taylor with a civil penalty and did not award attorney fees. A judgment was entered to that effect, holding the amount of restitution open pending a hearing and submission of briefs on the issue. Following that hearing, a second judgment was entered awarding restitution to Bridgefield in the amount of $12,833.62 and to Specialty in the amount of $62,340.37. Taylor's motion for new trial was denied.
This appeal ensued, with Taylor raising the following assignments of error:
1. The trial court erred granting defendant's Motion for Involuntary Dismissal before the close of plaintiff's case-in-chief.
2. The trial court committed manifest error by denying plaintiff's Motion for New Trial.
3. The trial court erred in failing to sustain plaintiff's Exception of Vagueness.
4. The trial court erred in denying plaintiff's request to proffer exhibits.
5. The trial court erred in refusing to set a hearing on the issue of whether a successor Judge should have decided the Motion for New Trial.
6. The trial court erred in ruling that appellant committed fraud in violation of La. R.S. 23:1208.
7. The trial court committed manifest error in ruling that restitution is owed by the plaintiff to the defendant.
8. The trial court erred in setting the amounts of restitution owed by the plaintiff to the defendants.
Defendants Tommie's and Bridgefield answered the appeal asserting that the restitution award in favor of Tommie's and Bridgefield should be increased and the restitution award in favor of Specialty should be reduced. Alternatively, Tommie's and Bridgefield urge that, if the restitution awards are affirmed, this court remand the matter for a ruling on their claim filed against Specialty.

DISCUSSION

Fraud, Forfeiture of Benefits and Entitlement to Restitution
We will first address the substantive finding of fraud, forfeiture of Taylor's *857 benefits and Defendant's entitlement to restitution. In assignments of error numbers 6 and 7, Taylor argues that the WCJ committed manifest error in finding fraud and in awarding Defendants restitution. We disagree. La. R.S. 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.
C. * * *
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
* * *
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained", for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and, (3) it is made for the purpose of obtaining or defeating any benefit or payment. Morton v. Wal-Mart Stores, Inc., 36,398 (La.App.2d Cir.10/25/02), 830 So.2d 533, writ denied, 02-2814 (La.2/7/03), 836 So.2d 101, citing Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7; and Smalley v. Integrity, Inc., 31,247 (La.App.2d Cir.12/9/98), 722 So.2d 332, writ denied, 99-0072 (La.3/19/99), 739 So.2d 782. The statute applies to any false statement or misrepresentation willfully by a claimant for the purpose of obtaining benefits. Morton, supra; Resweber, supra. La. R.S. 23:1208 is generally applicable once an accident has allegedly occurred and a claim is made. Id. Further, in Morton we noted:
In enacting and amending La.R.S. 23:1208, the legislature made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud *858 the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over the years to make La.R.S. 23:1208 easier to enforce and to make its penalties stronger. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits and this legislative intent cannot be ignored. See Resweber, supra.

Whether a workers' compensation claimant has forfeited his right to benefits by making a false statement for the purpose of obtaining benefits is a question of fact that will not be disturbed on appeal absent manifest error. Morton, supra; Bossier Electric v. Cubley, 35,852 (La.App.2d Cir.6/14/02), 821 So.2d 685.
In the present case, the WCJ specifically described three instances of false statements or misrepresentations in support of her finding of fraud. On review, we find that the record contains ample support for each of these false statements or misrepresentations. By way of background, we note that, after resigning from Tommie's, Taylor went to work for Louisiana Gaming, owned by Harold Rosbottom. The last paycheck he received from Rosbottom was dated February 28, 2002. The first misrepresentation by Taylor concerns his testimony that he had not been employed or received any wages for work since February 2002. Taylor acknowledged that he was receiving $1,000 per month from Rosbottom beginning in March 2002, but Taylor characterized this money as "hush money" or payments to ensure Taylor would keep confidential trade secrets, etc., to which he had been privy while working for Louisiana Gaming. Taylor testified that he was not performing any work for this money in terms of servicing video poker machines or locations or setting up video poker contacts for Rosbottom. Several items of email correspondence were introduced, however, that specifically indicate that Taylor was performing such services for this monthly payment. The WCJ's conclusion that Taylor was engaging in work activity in exchange for this payment after February 2002 is unquestionably supported by the record and we find no error in her decision that Taylor made false statements in this regard. The WCJ further found that this false testimony was willful and made for the purpose of obtaining benefits, a finding with which we concur. Taylor is not a novice to the workers' compensation system, having been on both the claimant and employer side of similar disputes on several occasions in the past.[2] Taylor was aware that he could not obtain benefits if he was working. We find no error in the conclusion that Taylor's attempt to characterize his receipt of money from Rosbottom as something other than wages was designed to allow him to obtain benefits in contravention of the statute.
Second, the WCJ found that Taylor made false statements regarding prior accidents and injuries and specifically cited his statements concerning an automobile accident that occurred on January 25, 2002, in which Taylor was injured. During a deposition taken in June 2002, he characterized the accident as a "fender-bender" and stated that he was not injured and did not seek medical treatment following the accident. In his deposition taken in September 2002, he admitted making a police report at the time of the January 25, 2002 *859 automobile accident, but maintained that he was not injured. In his trial testimony, however, he admitted that he did in fact seek medical treatment at the emergency room the night of that accident, which is borne out by the emergency room record. The WCJ found that the mischaracterizations of the seriousness of the accident to the insurance companies was willful and an attempt to conceal his injuries from the accident so that it would not affect his benefits. We agree with the WCJ that Taylor knew that an intervening injury would be an obstacle in his workers' compensation claim against Tommie's.
Third, the WCJ found that Taylor had not told Dr. Ramos that he had gone to the emergency room after the January 25, 2002 automobile accident. Taylor cancelled a re-check appointment with Dr. Ramos scheduled for just six days after the accident for the stated reason that his attorney had advised him not to return to Dr. Ramos until financial matters had been resolved.[3] When Taylor next saw Dr. Ramos, on March 4, 2002, the doctor's record indicates that Taylor described his condition as deteriorating with only a brief mention that he was involved in an automobile accident. No details of the accident or injury were reported and there is no indication that Dr. Ramos knew that Taylor had sought emergency room treatment for injuries resulting from the accident.
The WCJ also describes a misrepresentation about a prior injury and ensuing workers' compensation claim arising out of an offshore accident that occurred in 1981. Taylor testified at trial that he did not recall the details of the injury or treatment, but what he did recall was that he suffered an injury to his head in this offshore accident. The medical records, however, reveal that he suffered a head, neck and shoulder injury, with long-term complaints of severe neck pain and pain in the upper shoulder region. This evidence squarely contradicts Taylor's testimony that he had suffered prior neck injuries from car accidents. The WCJ further found that these false statements regarding prior injuries were willful and made in an attempt to obtain benefits. We find no error in this conclusion.
In summary, this record contains overwhelming support for the WCJ's finding that (1) false statements were made; (2) the statements were willful and (3) the statements were made for the purpose of obtaining workers' compensation benefits. Accordingly, we find no error in the WCJ's conclusion that Taylor forfeited his right to benefits under La. R.S. 23:1208(E) and that Defendants are entitled to restitution as allowed under La. R.S. 23:1208(C)(4). Assignments of error numbers 6 and 7 are without merit.

Involuntary Dismissal, Proffer, Motion for New Trial and Successor Judge
We now address the timing and procedural component of the WCJ's decision in this case. As previously stated, the WCJ granted Defendants' motion for involuntary dismissal at the close of Taylor's testimony. In assignments of error numbers 1 and 4, Taylor argues that it was improper for the WCJ to grant the motion for involuntary dismissal because he had not completed presentation of his case; and, further, after granting the dismissal, he asserts that it was error for the WCJ to refuse to allow him to proffer the deposition testimony of an additional witness. In assignment of error number 2, Taylor challenges the denial of his motion *860 for new trial on the grounds that he was denied the opportunity to present all of his evidence. We find no merit in Taylor's arguments.
An involuntary dismissal should not be reversed absent manifest error or unless clearly wrong. Clifton v. Coleman, 32,612 (La.App.2d Cir.12/23/99), 748 So.2d 1263, writ denied, 00-0201 (La.3/24/00), 758 So.2d 151; Darton v. Kroger Co., 30,771 (La.App.2d Cir.8/25/98), 716 So.2d 974; Keller v. Odin Management, Inc., 31,305, 30,682 (La.App.2d Cir.8/19/98), 716 So.2d 962, writ denied, 98-2434 (La.1/8/99), 734 So.2d 1228. A trial judge has much discretion in the granting of an involuntary dismissal. Locke v. Sheriff, Parish of Jefferson, 94-652, 94-653 (La.App. 5th Cir.12/28/94), 694 So.2d 257, writ denied, 95-0268 (La.3/24/95), 651 So.2d 293; Vernon Parish Police Jury v. Buckley, 00-00045 (La.App. 3d Cir.11/2/00), 776 So.2d 17.
La. C.C.P. art. 1672(B) provides, in pertinent part:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right for relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
While an involuntary dismissal is usually determined at the close of the plaintiff's case or at the conclusion of the trial, this court has recognized that, where there is a finding that no additional evidence would alter the ruling, a dismissal may be proper. See Gould v. Gould, 28,996 (La.App.2d Cir.1/24/97), 687 So.2d 685.
In the case sub judice, the WCJ specifically stated that there was no other conceivable evidence that could be presented by Taylor to alter her finding that he violated La. R.S. 23:1208 in making willful fraudulent statements for the purpose of obtaining workers' compensation benefits. As discussed above, the WCJ outlined three instances of specific misrepresentations by Taylor during his testimony at trial, depositions and statements to Dr. Ramos regarding his work history and prior injuries. Taylor's counsel argued to the WCJ that he intended to call an additional witness, Jason Gates, an employee of Rosbottom's, who would corroborate Taylor's testimony that he did not in fact "work" for the $1,000 monthly payments made by Rosbottom to him. The WCJ, however, properly responded that the question was not whether or not Taylor actually worked for the payments from Rosbottom, i.e. was employed by Rosbottom after February 2002, but the fact that he had acknowledged that he was performing employment type services in prior email correspondence with Rosbottom and others, but then testified to the contrary, stating at trial that he did not work for the payments from Rosbottom and that he was not employed after February 2002. This fraudulent statement at trial formed part of the basis for the WCJ's conclusion and she properly determined that no further evidence from any witness could cure this fraud. We find no manifest error in the WCJ's decision to dismiss Taylor's suit at that juncture. We agree with Defendants that the WCJ's finding was in actuality a favorable ruling on their reconventional demands; and, as previously discussed, we find no manifest error in the WCJ's finding of fraud under La. R.S. 23:1208.
Likewise, we find no reversible error in the WCJ's decision to refuse Taylor's *861 proposed proffer of the deposition testimony of Mr. Gates. La. C.C.P. art. 1636 provides, in pertinent part:
A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
If the record reveals the nature of the excluded evidence, the requirements of this article are satisfied. Gulf Outlet Marina, Inc. v. Spain, 02-1589 (La.App. 4th Cir.6/25/03), 854 So.2d 386, writ denied, 03-2075 (La.11/7/03), 857 So.2d 497. The record in this case contains the substance of Mr. Gates' testimony and the WCJ concluded, and we agree, that such testimony would not have altered the result in this case. Taylor's fraud was evident from his own testimony and nothing contained in Gate's deposition could have affected this result. There was no abuse of discretion in the WCJ's disallowing the proffer of Mr. Gates' deposition.
For the above reasons, we conclude that assignments of error numbers 1 and 4 are without merit. For the same reasons, we find no merit in Taylor's assignment of error number 2, wherein he argues that the WCJ should have granted his motion for new trial because he did not have the opportunity to present his entire case. Finally, we find no merit in Taylor's assignment of error number 5, which asserts that it was error not to have a hearing on the issue of which judge should decide the motion for new trial. Judge Warren presided over the trial and entered judgment on the merits, both finding fraud and setting the amount of restitution. She signed the judgment denying the motion for new trial and denying Taylor's subsequent request for oral argument on the motion for new trial. The record does not support Taylor's argument that La. R.S. 13:4209[4] was violated in this case.

Amounts of Restitution and Exception of Vagueness Specialty
La. R.S. 23:1208(D) states that "[r]estitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct." The November 2000 work-related automobile accident occurred while Specialty was Tommie's workers' compensation carrier and Taylor's claim for benefits based on his injuries in that accident was not disputed by Specialty. Rather, Specialty paid both medical and indemnity benefits for that injury, totaling $40,432.14. These benefits paid by Specialty ceased when Taylor returned to work. The subject matter of Taylor's current claim is the subsequent alleged work-related accident of September 14, 2001. By the time of this second accident, Specialty had already paid benefits for the November 2000 injury. There was no evidence presented that Taylor willfully made false statements or misrepresentations for the purpose of obtaining benefits for the November 2000 injury.[5] Accordingly, there can be no restitution for the medical and indemnity benefits paid by Specialty for that injury. See Morton, supra.
*862 The false statements and misrepresentations properly found by the WCJ to constitute fraud in this case concern Taylor's attempt to get benefits for the September 14, 2001 injury. Taylor named Specialty as a defendant, alleging that additional benefits were owed by Specialty because the September 14, 2001 injury was a re-aggravation of the November 2000 injury. There has been a proper determination that Taylor violated La. R.S. 23:1208 in making fraudulent statements for purposes of obtaining these additional benefits. Had Specialty paid any additional medical and/or indemnity benefits on the current claim, it would be entitled to restitution of the same; however, this record does not indicate that any such payments were made. This court has held, however, that the civil remedy of restitution for "benefits made or payments obtained" as provided in 23:1208(D) is defined as stated in the criminal provision, subsection (C)(4), of the statute, namely, "the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expenses, and reasonable costs of investigation and litigation." (Emphasis added.) See Yarnell Ice Cream Co. v. Allen, 33,020 La.App.2d Cir.5/10/00), 759 So.2d 1066, writ granted, 00-1520 (La.9/15/00), 767 So.2d 699, order recalled, 00-1520 (La.1/17/01), 777 So.2d 472. We find that Specialty was required to investigate and defend this claim as a re-aggravation injury claim; and, since Taylor violated 23:1208 in seeking these additional benefits from Specialty, Specialty is entitled to restitution of its reasonable costs of investigation and litigation in defending the claim. The plain language of the statute, however, limits this award of restitution to the date the employer first learned of the fraudulent conduct. La. R.S. 23:1208(D); Dukes v. Sherwood Acres Apartments, 01-2325 (La.App. 1st Cir.11/8/02), 835 So.2d 742; Hull v. Fluker Farms, 00-0757 (La.App. 1st Cir.5/11/01), 787 So.2d 535, writ denied, 01-2291 (La.11/16/01), 802 So.2d 612. The WCJ determined this to be Taylor's September 17, 2002 deposition and we see no manifest error in that determination. The award of restitution to Specialty is, therefore, reversed, but the issue is remanded to the Office of Workers' Compensation for determination of the amount of restitution due Specialty for reasonable investigation and litigation expenses incurred as a result of the September 14, 2001 injury claim through September 17, 2002.
With respect to the denial of Taylor's exception of vagueness regarding Specialty's reconventional demand, we find that any error in such ruling was harmless in that Taylor made false statements directly to the WCJ during his trial testimony and any prejudice suffered by Taylor by failure to specify past fraudulent statements was surpassed by his flagrant misrepresentations during the trial of this matter.

Tommie's and Bridgefield
Tommie's and Bridgefield answered this appeal seeking an increase in their restitution award and, alternatively, a remand for determination of their claim against Specialty in the event the alleged September 14, 2001 injury is in fact found to be a re-aggravation of the November 2000 injury. We find no abuse of discretion in the WCJ's award of $12,833.62 to Tommie's and Bridgefield. The account summary submitted by Tommie's and Bridgefield shows this amount for total expenses, including court costs and expenses (which includes investigation expenses), attorney fees and medical bills paid through September *863 17, 2002. As previously stated, the statute and jurisprudence dictate that the restitution is recoverable only through the date the employer became aware of the fraudulent conduct, which, in this case, was Taylor's deposition of September 17, 2002. We will not disturb the WCJ's award to Tommie's and Bridgefield.
Finally, we agree with Tommie's and Bridgefield that this matter should be remanded to the OWC for a ruling on their claim against Specialty. This claim requires a determination of whether the alleged September 14, 2001 injury was in fact a re-aggravation of the November 2000 injury, in which case Specialty would be liable for the injury and not Bridgefield.

DECREE
For the foregoing reasons, the judgment of the WCJ awarding U.S. Specialty Insurance Company restitution in the amount of $62,340.37 is reversed and the matter remanded to the WCJ for determination of the amount of restitution to which U.S. Specialty Insurance Company is entitled, i.e., the reasonable cost of investigation and litigation, incurred after the 1008 filing on the September 14, 2001 injury through September 17, 2002. The matter is also remanded for ruling on Tommie's Novelty and Gaming's and Bridgefield Casualty Insurance Company's claim against U.S. Specialty Insurance Company. In all other respects, the judgment of the WCJ is affirmed. Costs of appeal are assessed against Gregory M. Taylor and U.S. Specialty Insurance Company equally.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
CARAWAY, J., concurs in part and dissents in part with written reasons.
CARAWAY, J., concurring in part and dissenting in part.
While I concur with most conclusions reached by the majority, I must respectfully dissent regarding the issue of attorney fees.
Taylor appealed the restitution judgments awarded to both Specialty and Bridgefield pursuant to Section 1208(D) of the Workers' Compensation Act. La. R.S. 23:1208(D). We have found that Specialty paid no benefits to Taylor for the September 2000 re-aggravation injury claim, that Specialty's payments of $40,432 in benefits for Taylor's prior work-related injury and surgery were not the subject of the false representations, and that no restitution is owed for those benefit payments. Nevertheless, since Specialty was required to defend the re-aggravation injury claim which was tainted by Taylor's false representations, the majority rules that Specialty is entitled to attorney fees for that defense and remands for a determination of the amount of such fees under Section 1208(D).
Section 1208(D) is a penal statute. Although the Act is to be liberally construed in regard to benefits, penal statutes within the Act are to be strictly construed. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46. Attorney fees are not recoverable by a litigant unless expressly authorized by statute or contract. Huddleston v. Bossier Bank and Trust Co., 475 So.2d 1082 (La.1985). Even in cases of fraud regarding a contract or for conversion, attorney fees have not been awarded. Lloyd v. Merit Loan Co. of Shreveport, 253 So.2d 117 (La.App. 2d Cir.1971), writ refused, 259 La. 1050, 254 So.2d 462 (1971); Simon v. Fasig-Tipton Co., 92-173 (La. App. 3d Cir.3/22/95), 652 So.2d 1351, writ denied, 95-1010 (La.6/2/95), 654 So.2d 1111.
From the plain wording of Subsection D of the statute, Specialty may receive "restitution" "only" "for benefits claimed or payments obtained" by Taylor. The majority's reliance upon the special definition for the phrase "benefits claimed or payments *864 obtained" in Subsection C of Section 1208 is misplaced. La. R.S. 23:1208(C)(4). Subsection C provides the criminal sanctions for a Section 1208 violation. It denominates three grades of fraud crimes, dependent on the value of "benefits claimed or payments obtained." A precise definition for the phrase is needed to distinguish each grade of the crime. Yet, the definition only applies to the criminal part of the statute, as expressly indicated by the phrase, "for purposes of Subsection C of this Section." Moreover, even the special definition of La. R.S. 23:1208(C)(4) does not list attorney fees which is a term distinguishable from "litigation costs" or "investigation costs." Last, the purpose of the civil restitution Subsection D clearly imposes a penalty upon the fraudulent employee which may serve to both deter the employee and award the employer. Yet, the additional award to the employer in Subsection D, over and above the amount of restitution for the "benefits claimed or payments obtained," is given in the form of a penalty, which the OWC may assess up to $5,000, and not as an award for attorney fees.
Accordingly, I would not remand Specialty's claim against Taylor for attorney fees but would reverse and dismiss its entire claim. Likewise, since the $12,833.62 restitution award to Bridgefield included $7,969.10 in attorney fees, I dissent to the affirmance of that entire award.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.
GASKINS and CARAWAY, JJ., would grant rehearing.
NOTES
[1] Defendants have filed suit for damages against adverse parties arising out of this dispute and those actions are pending in district court.
[2] Taylor testified that he has been involved in 16 separate lawsuits, including prior workers' compensation claims.
[3] Apparently, there was an ongoing collection matter regarding Taylor's account with Dr. Ramos.
[4] La. R.S. 13:4209 provides, in pertinent part:

A. In all cases heard and taken under advisement of the district judge or judges of the city courts, if the judge before whom a case is tried dies, resigns, or is removed from office, or if his term expires before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record....
[5] We note that the WCJ did find that, in his trial testimony, Taylor misrepresented his injury from the 1981 offshore accident. While this prior injury pre-dates the November 2000 accident, there is no evidence that Taylor made the same misrepresentation to Specialty when he sought benefits for the November 2000 injury.