27 So.3d 45 (2006)
Leo J. COX, a/k/a, Leonard Cook, Appellant,
v.
James V. CROSBY, Jr., Secretary, Department of Corrections, Appellee.
No. 1D05-3857.
District Court of Appeal of Florida, First District.
January 26, 2006.
Rehearing Denied September 21, 2006.
Leo J. Cox, pro se, appellant.
Charlie Crist, Attorney General, and Joy A. Stubbs, Assistant Attorney General, Tallahassee, for appellee.

ORDER ON APPELLANT'S MOTION FOR REVIEW
WEBSTER, J.
By petition for writ of mandamus, Leo J. Cox argued in the Circuit Court for Leon County that a 1993 amendment to section 944.275, Florida Statutes, which precluded him from receiving basic gain time, was unconstitutional. If successful, Cox would have been entitled to more than five years of additional gain time. The petition was denied and Cox has appealed to this court.
The circuit court issued an order which found Cox to be indigent for the appeal in accordance with section 57.085, Florida Statutes, and imposed a lien on his inmate trust account to recover the applicable filing fees. Cox moves for review of that order pursuant to Florida Rule of Appellate Procedure 9.430(a) and argues that his circuit court petition was a "collateral criminal" proceeding as described in Schmidt v. Crusoe, 878 So.2d 361 (Fla. 2003). He contends that his indigency should therefore be resolved under section 57.081, Florida Statutes, which does not contain a lien provision. See Cason v. Crosby, 892 So.2d 536 (Fla. 1st DCA 2005). Appellee opposes the motion and argues that the holding in Schmidt should be limited to its facts, where the appealing party *46 has challenged the forfeiture of gain time by corrections officials.
Appellee's argument is not without appeal. We cannot, however, accept it in light of the reasoning of the court in Schmidt. There, the court said "it is apparent that an action affecting gain time does in fact affect the computation of a criminal defendant's sentence, because the length of time the inmate will actually spend in prison is directly affected." 878 So.2d at 366. Further, the court stated:
It is clear that the [United States] Supreme Court has refused to be bound by the variations in terminology used in the various challenges to the computation of an inmate's sentence. Instead, it has looked to the effect the challenged action had on the amount of time an inmate has to actually spend in prison. We think we should do the same; thus, we conclude that a gain time challenge is analogous to a collateral challenge to a sentence in a criminal proceeding because the end result is the samethe inmate's time in prison is directly affected.
Id. at 367. Here, if appellant's claim is successful the result would be that his time in prison would be "directly affected," i.e., significantly reduced. We are, therefore, constrained to conclude that this proceeding is a "collateral criminal" one as defined by our supreme court in Schmidt. Accordingly, we grant appellant's motion for review and reverse the trial court's order to the extent it imposes a lien on his inmate trust account to recover applicable filing fees. However, because we share many of the dissent's concerns regarding what we perceive to be the logical implications of Schmidt in cases such as this, we certify to the supreme court the following question, which we believe to be of great public importance:
DOES THE HOLDING IN SCHMIDT V. CRUSOE, 878 So.2d 361 (Fla.2003), EXTEND TO ALL ACTIONS, REGARDLESS OF THEIR NATURE, IN WHICH, IF SUCCESSFUL, THE COMPLAINING PARTY'S CLAIM WOULD DIRECTLY AFFECT HIS OR HER TIME IN PRISON, SO TO PRECLUDE IMPOSITION OF A LIEN ON THE INMATE'S TRUST ACCOUNT TO RECOVER APPLICABLE FILING FEES?
MOTION FOR REVIEW GRANTED; ORDER REVERSED; and QUESTION CERTIFIED.
LEWIS, J., concurs; HAWKES, J., dissents with written opinion.
HAWKES, J., dissenting.
Beyond dispute, Appellant's challenge to the 1993 amendment to section 944.275, Florida Statutes, as violative of the constitutional single subject requirement, was a routine civil suit. This type of challenge is not exclusive to criminal cases or even criminal offenders. In fact, cost to the plaintiff is the only difference in the action filed by this prisoner, and an identical action filed by a citizen who remains at liberty. The citizen would have financial consequences from which the majority, contrary to express statutory requirements, chooses to exempt Florida's entire prison population.
The justification for this judicial largesse is the majority's speculation[1] that, if the *47 suit had merit, Appellant may have earned more than five years of additional gain-time from his 20-year sentence. This may explain why Appellant brought the suit. However, it does not, and cannot, magically transform this civil suit into a "collateral criminal" action.
As support for its decision, the majority relies on Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003). In Schmidt, an inmate challenged the loss of vested, earned gain-time for an alleged infraction. The question confronting the Schmidt Court was whether "a writ petition contesting the forfeiture of gain-time which results in a longer period of incarceration should also be considered a collateral criminal proceeding and thus exempt from the statute ..." Id. at 362 (emphasis added). The Court concluded "Schmidt's loss of gain-time effectively lengthened his sentence, since, by the Department of Corrections' action he now has to serve that additional time in prison." Id. at 367 (emphasis added).
This court applied the Schmidt reasoning in Cason v. Crosby, 892 So.2d 536 (Fla. 1st DCA 2005). In Cason, the inmate challenged a disciplinary action of the Department of Corrections. This court recognized Schmidt held cases "where the prisoner challenges the loss of gain-time, are collateral criminal proceedings and are exempt from section 57.085." Id. at 537 (emphasis added).
In both Schmidt and Cason, the lawsuit challenged administrative action that resulted in the prisoner being required to serve a greater period of incarceration. Schmidt and Cason, unlike the instant action, did not involve prisoners who, 10 years after the challenged action occurred, decided to file a civil lawsuit challenging the legislature's compliance with constitutional prerequisites to enact a valid law. If the prisoners in Schmidt and Cason were successful, they would get back the gain-time they recently lost. Conversely, here, Appellant does not seek to get back what he lost. Instead, he seeks to receive what he never had.
The Florida Supreme Court's decision to expand the scope of section 57.081 in the context of a review of prison discipline cases can be understood. There are similarities between a collateral criminal claim and the challenge a prisoner would make to the loss of vested gain-time. In most claims for collateral relief or a disciplinary challenge, the prisoner must act within rigid time-frames or sacrifice any potential relief. The prisoner/plaintiff here faces no time constraints.
Moreover, in both collateral criminal claims and disciplinary challenges, each prisoner's case is based on a unique set of facts. Each prisoner claims that, based on the particular facts of his case, he was personally deprived of some right he previously possessed. The resolution of one prisoner's case does not resolve the issue for every other prisoner who may later file a similar case. These factors are not true here.
The majority's holding here dramatically expands Schmidt. Contrary to the opinion's *48 implication, no logical analysis can limit the holding to cases involving gain-time. For example, why would the section 57.085 lien be applicable to a prisoner, who, a decade after he was sentenced, alleges a procedural defect by the legislature in the passage of a habitual offender statute, and argues he would serve less time in prison if the statute is stricken? Because the potential result is less time in prison, it would fit within the rubric of the majority's logic.
The majority's logic creates a test consisting of only a single element. That element is met by an allegation that, if the challenge were "successful the result would be that his time in prison would be `directly affected,' i.e., significantly reduced." (Majority op. p. 46). This simplistic test merely requires the possibility that a prisoner would be released from prison sooner if successful in his challenge. This test can be met whether the prisoner challenges gain-time provisions, sentencing provisions, or even the procedures the legislature followed years previously in passing the statute that criminalized the conduct that resulted in the prisoner's incarceration.
Now, if technically possible that "time in prison would be `directly affected,' i.e., significantly reduced," any of Florida's approximately 80,000 inmates can challenge the constitutionality of the procedures the legislature used to pass any statute. They can even file their challenge years after the legislature acted, and they can do so even if the same argument could have been made previously. Certainly, nothing in the test would prohibit a prisoner from bringing a challenge that another prisoner made previously. Indeed, no logical basis exists that would prevent the thousands of prisoners who were also denied automatic basic gain-time from the 1994 act from bringing the identical challenge now brought by Appellant.
The majority's logic would not even prevent repetitive filings by these thousands of inmates. In each of these cases, prisoners could file with impunity. None of them could be required to pay a filing fee or to sacrifice even the smallest purchase from his prison canteen fund. Unlike citizens who are not incarcerated, prisoners can utilize all of these judicial resources for free.
Florida law is clear. In civil cases, prisoners are required to pay a filing fee. The instant case is civil. Consequently, Appellant is required to pay a filing fee. Since he is indigent, the filing fee should be taken from a lien on his inmate trust account pursuant to section 57.085, Florida Statutes, as the legislature intended. Because the trial court properly imposed a lien on Appellant's inmate trust account to recover filing fees, I would affirm.
NOTES
[1] The contested amendment was part of the Safe Streets Initiative of 1994. This act was a comprehensive measure designed to address overcrowding in the state prison system. The many changes made by the act included: eliminating many mandatory sentences, re-writing the sentencing guidelines to alter the habitual sentencing prerequisites so fewer defendants qualify, removing the trial court's discretion to sentence all felony offenders to prison (22-month provision), changing the control release provisions, reducing the severity ranking for determining guideline sentences in some attempts, conspiracies, and solicitations, and prohibiting the legislature from creating new felony offenses or increasing the severity of any offense unless such action had a zero net impact on Florida's prison population, or the legislature identified a separate funding source to meet the estimated impact on the prison population. The changes in sentencing law were so numerous they consumed 63 pages in the Laws of Florida. Without knowing Appellant's complete criminal history, any assertion that he would spend less time in prison if the act were declared unconstitutional can only be speculative.